The opinion of the. Court was delivered by
Whitner, J.
These appellants resist the collection of a tax imposed by an ordinance of the City Council of Charleston, ratified 24th April, 1849. They are owners of stock in the State Bank and the Bank of South Carolina, and Council having ordained, inter alia, “ that a tax be raised and paid into the treasury of the city of 5 per cent, on every hundred dollars of dividends received,” &c., on such bank stocks, a suggestion was filed for a prohibition to restrain the City Council from levying this assessment. The prohibition was refused by the Judge on circuit, and, on appeal, the application is here renewed.
The grounds, as well as a detailed statement of the facts, appear in the suggestion of the relators, the answer of the City Council and the report of the Judge.
The question raised involves the power of the City Council of Charleston to tax dividends received on stocks in the incorporated banks of the State at all, as it will be found the objection applies to all such stocks. The judgment, therefore, aifects extensive interests, public and private, and the inquiry demands, consequently, grave consideration.
Power on the one hand, and exemption on the other, are the points this Court have especially considered. The policy involved in the exercise of the one, or the supposed inequality of the other, belong to other tribunals. To declare the law, is known to be the proper province of this Court; and the purpose will be to confine it within its proper sphere. These questions sometimes indicate the mind of the law maker, and hence may become subject of inquiry. By the Act “ To incorporate Charleston,” of 1783, the City Council was invested with “ full power and authority to make such assessments on the inhabitants of Charleston and those who hold taxable •property within the same, as shall appear to them expedient.”
It has been long held in this State, that the City Council is *565 thus “ invested with the same powers to impose taxes on legitimate subjects of taxation as the State itself possesses.” (Bulow & Potter vs. The City Council of Charleston, 1 N. & McC. 527).
Without enlarging on the inquiry as to proper subjects of taxation by the supreme authority, it is sufficient for present purposes that no doubt has been expressed, or is entertained, that bank stock and the dividends thereon, fall within this category, as a general proposition, and upon those, therefore, who object, the burthen devolves of making out the ground of exception.
On this branch of the inquiry, looking to the Acts creating these institutions, it is found that those persons who embarked their capital in these enterprises were required to pay a bonus into the State treasury. As a part of the history of those days, it is known that these sums were severally adjusted with much nicety of calculation, having reference to the amounts to be invested and the several periods allotted to their corporate existence. In every instance, this sum was required in advance, and was in consideration of certain powers and privileges conferred and secured. The terms used are slightly variant, but the effect is universally regarded the same. In the argument, it is said this payment was in consideration of the franchise, and in some of the adjudged cases, I find judicial dicta that it is to be regarded as the consideration of the franchise and for exemption from taxation. If is at least a prompt payment, and so much, for the time being, withdrawn from the capital stock, though it may be, in the course of banking, refunded from the profits. The implication is plain in either view. Nevertheless, it is worthy of remark, that in reference to “ The State Bank,” the charter provides that “ on this payment the said corporation and the stock thereof shall be relieved from the payment of all taxes during the time for which it is incorporated and in reference to “ The Bank of South Carolina,” in like manner it is provided, “ that in consideration of said payment, to be relieved from the payment of all taxes during the time for which it is incorporated.”
Hence these appellants claim to be exempt from the operation of the city ordinance in question, founding on this contract their *566 denial that either the stock owned by them or the dividends received there'on, are to be regarded as taxable property.
Whilst to the city authorities is conceded the same power to tax legitimate subjects that the State itself possesses, it is equally clear that nothing more has been or could be conferred. It is not to be denied, that wherein the State has tied its own hands, it must operate equally to fetter and restrain the City Council. Taxable property, by all just interpretation, 'is surely that property which is liable to be taxed by the State. In reference to these banks, stocks and their incidents thus authorized and set apart, what thereof may be regarded as taxable ?'
It has been settled by an adjudged case, (State Bank vs. City Council of Charleston, 3 Rich. 342,) that the real property of these banks, though within the corporate limits of the city, is exempt from taxation by the City Council. The grounds on which this exemption rests are worthy of examination. For, however clear this may be regarded now, there was a day when it was not so considered, as appears by efforts once made. The terms used are, “ The bank,” “ the said corporation,” “ shall be relieved.” Why was this held to extend to .real property owned by the banks ? Because, say the Court, per O’Neall, X, “ to be intended for any thing else than a mockery, an exemption of a bank from taxation must extend to something else than the bank. It is a body corporate, but stripped of its funds and property, it would be difficult to find the corpus.” The conclusion seems palpable, that if subjected to taxation, without property it could not be levied, so if it is authorized to hold property and exempt, such exemption must relieve the property: and the suggestion is made, evidently founded in good sense, that “ an exemption of a citizen, without qualification, from all taxes, must necessarily exempt both his person and property from all taxation.”
Again, these terms might well be regarded as extended to the relief of the original stock by the same course of argument. Although the corporation be an “ artificial being,” yet it is also a collection of individuals united in one body, vested with a capa *567 city of acting in several respects as an individual, according to the design of its institution or the powers conferred. Such funds are indispensible to the very being of these corporations. Not yet having vitality until contributed, and expiring on the mo ment and by the act of their withdrawal. In one of these charters, “ the stock,” eo nomine, is “ relieved from the payment of all taxes,” and, as has been already remarked, though the terms used are somewhat different, it has been conceded here, and so held elsewhere, that the design was, and the effect has been, to place each on the same footing. The real and personal property held and owned as authorized by the charter, being exempt from all taxation, it remains to be seen whether, by all just interpretation, such exemption does not include the rents and profits flowing therefrom. Dividends, it is urged, are the private property of the stockholder, and when received by him, become the separate property of the citizen. Hence, as any other property, are fairly taxable. This view, I admit, is plausible, but in reference to the case in hand, I think, is fallacious.
Looking to the true principle involved, and the manifest intention of these contracting parties, the government on the one part and a body of citizens on the other, the creation and intervention of an artificial being or the employment of capital merely in banking operations, cannot lead to such strange conclusions. Relief of the bank from all taxation, includes property of the bank. Relief of the citizen from all taxation includes the property owned by him, each as incidents. If this be so of persons, whether artificial or natural, the principle must equally apply to things. If the citizen be relieved from the payment of taxes by contract, in consideration of a bonus paid, on a house and lot, by no fair construction could the rent he might derive be the subject of taxation, otherwise the benefit of his exemption would depend alone on his occupation of the premises.
If the citizen, intending to invest his private capital in bonds at interest, should, on the payment of a bonus, thereby secure relief from taxation thereon, as well as the right so to employ his capital, by no just interpretation of his contract could he be *568 deprived of the profits of his investment, by a tax on the interest accruing from year to year.
Profits on stock remaining in the bank are not taxable, though segregated they may be from other funds. In what lies the difference, when transferred to the individual stockholder, than when held by the stockholders jointly, is not easily perceived. The stock itself, though essential to the corporation, and subject to certain liabilities, is divided into shares, according to the amount contributed by each individual, each in fact being owner pro tanto of the original stock. The property which each member possesses in it, in a qualified sense, is distinct and independent of the others, though bound together and pledged, as remarked, and this stock, thus owned and held, is exonerated from taxation, and the profits, whilst in bank, likewise relieved, though as they pass from its coffers and whilst yet unchanged in the hands of one who composes a part of the body politic, at once, it is contended, incur a liability from which they were previously free. When the distinctive character of the fund is changed, by a different investment, in lands, slaves, &c., then the reason becomes plain and the right may well be conceded to exist.
It must be borne in mind that the stockholders paid a tax in advance on the capital stock, for the privilege of making profits in a particular course of business. By the scheme, the profits, therefore, have been taxed in . anticipation, virtually, and if, instead of levying the tax in the form of a bonus, a round sum and in advance for a term of years, the charter had provided a payment of 1 or 2 per cent, per annum, for 14 years, on the capital stock invested, declaring that in consideration thereof the said stock should be relieved from all taxes, a further assessment on annually accruing profits would hardly have been thought of.
The right claimed acknowledges no limit. The will of the corporation, for the time being, fixes the extent, these banks, with many others, being located in the city. Dividends here declared, set apart and receivable, hence might be regarded subject to taxation to any amount, according to discretion. Not only so, but the citizen of Greenville, on such a construction as that *569 contended for, being a stockholder in these banks, instead of an exemption from all further taxation on his investment, in consideration of his advanced payment, might find these profits subjected to a further tax by the State, the tax assessed by the city where received, and a still further tax by the town of Greenville, where he proposed to disburse the pittance that might remain.
Stocks derive their value from the dividends they yield, and if such be the shield they have secured to them from the common burthen of taxation, by a previous contract, on a bonus paid in advance, as a class the owners of stock are without protection or guarantee in their contract.
The construction evidently given to this contract by one of the contracting parties, would be of some avail, at least in a doubtful question.
The Legislature, from the organization of these banks, including all incorporated by the State, on the payment of the bonus required, as well on the original charter as upon each renewal, has carefully abstained from all other taxation, as well of dividends received by the stockholders as property held by the Bank. Capital otherwise invested, and monies at interest, secured by bonds, notes, &c., accruing interest on money loaned, time and again have been resorted to, but always with an exception of banks incorporated by the State, the stock thereof and dividends thereon. So, too, in 1830, when a tax was imposed “ of one per .cent, upon all dividends arising from stock owned by any citizen of this State in all banks not chartered by this State,” the exemption of dividends arising from stocks in our own banks, could only be vindicated on the ground of having already paid a tax in the form of a bonus. In the case of Berney vs. Tax Collector, (2 Bail. 678,) Harper, J., in the opinion delivered, puts it on the footing of a contract, and that it would be a breach of good faith to subject them to further burthens.
Cases have been referred to as authorities in point, and whilst it is admitted, that dicta of Judges may be extracted from some of the cases, yet it will be found, I think, that the cases themselves are distinguishable from this. I allude to the cases of *570 Bulow & Potter vs. The City Council of Charleston, (1 N. & McC. 527); McCulloch vs. The State of Maryland, (4 Wheat. 436): Berney vs. Tax Collector, (2 Bail. 654); and Weston vs. City Council of Charleston, (in Harp. Rep. 340, and again 2 Pet. 449.
The questions here severally raised lead to an investigation of the rights of separate jurisdictions, claimed to be independent of each other. The taxing or contracting power of the one, in no way, it was contended, excluded the authority of the other. Here the right is directly derivative and wholly subordinate.
In the case of Bulow & Potter, certain distinctions are taken, as between the Bank of the United States and the stockholder, between thé interest of the United States and the individual stockholders, and that, in consequence, although under the peculiar structure of our government and this institution, it might be that the bank .was not the subject of State taxation, yet that the citizen, or the stock rather, in the hands of the citizen, might be. Now here, the stock itself has been shewn to be exempt, and to the extent that the foregoing case has shewn that the commingling of private capital with banking operations does not necessarily and wholly destroy its distinctive character, so far at least it vindicates the view I have sought to maintain. In the case of McCulloch, the distinguished Chief Justice Marshall is considered as having conceded at once a distinction and a right to tax bearing directly on the point here controverted. In the opinion delivered, asserting the restraint to tax the bank, he intimates evidently that the principle on which this rests, may not extend to a tax paid by the real property of the United States Bank, in common with other real property within the State, nor to a tax imposed on the interest which the citizen of the State may hold in the institution, in common with other property of the same description throughout the State. Again, it will be seen, however, that subsequently, in the case of Weston, it was held, that a tax, imposed by the City Council of Charleston, on the 6 and 7 per cent, stock of the United States, owned and possessed within the limits of the city, was not authorized. Whether *571 these distinctions were soundly taken, was questioned by our own eminent jurist, the late Judge Harper, with his accustomed modesty, in Berney vs. The Tax Collector, nor was the ground of difference perceived by the clear mind of Johnson, J., as expressed in the same case ; still I must be permitted to reiterate, that here, where there is and can be no conflict of jurisdiction, the real property of these banks and the interest, that is, the stock the citizen holds in them, are not taxable in this State, by contract, founded on valuable consideration. The right of the State to exempt within its limits, is not drawn in question, and the binding obligation on all subordinate authorities is incon-testible.
The judgment of the Court below is reversed; and it is ordered that a writ of prohibition issue to restrain the City Council of Charleston from the collection of the assessment in question.
O’Neall, Evans, Wardlaw and Withers, JJ. and Dun-kin, Dargan and Wardlaw, CC. concurred.