Bullard, J.
This is an action instituted by the Attorney General, in the name of the State] for the use of the Charity Hospital, against the captain of a steamboat plying between Ntobile and New Orleans, to recover from him the amount of the tax levied on passengers from other States by the act of 1843, entitled “ An act to amend an act to provide a fund for the support of the Charity Hospital,” &c. The ground upon which the recovery is sought is, that the defendant had refused to collect and pay over the taxes upon a large number of passengers who had arrived, at different times, on board his boat.
The second section of the statute declares, “ that masters of vessels and steamboats arriving at the city of New Orleans shall collect, and pay to the collector appointed by the Charity Hospital, the tax on each and every passenger on board the vessel o steamboat under his command,” &c.; “ and any passenger refusing to pay said tax, the master of said vessel or steamboat may detain, and sell a sufficient proportion of his, her or their baggage for the payment of the same.” Another section authorizes the collector of the Hospital to demand the register or record of passengers, and imposes a penalty on the captain of fifty dollars in case of his refusal. But the statute imposes no penalty on him in case of his refusal to collect the tax from his passengers, as authorized by the second section.
The defendant, in his answer, admitting that he is the commander of a boat for the transportation of merchandize and passengers, avers that the statute of the State of Louisiana recited in the petition, is null, void and of no effect, because it is repugnant *214 to the constitution and laws of the United States, and that, by reason thereof, he is not bound to collect, receive, or pay over said tax. He further avers, that his steamer, called the Fashion, is a coasting vessel, carrying merchandize and passengers for hire, between Port Pontchartrain and the States of Alabama and Mississippi, under a license from the United States.
The defendant has thus chosen to rest his defence mainly upon the unconstitutionality of the State law imposing a tax upon persons arriving from abroad, and the judgment of the District Court being against him on that point, he prosecutes the present appeal.
The counsel for the appellant contends : 1st, That the act in question is repugnant to that part of the federal constitution which confers on Congress the power “ to regulate commerce with foreign nations and among the several States, and with the Indian tribes.” Art. 1, sec. 8. And secondly, that it is contrary to the acts of Congress providing for the admission of Louisiana into the Uuion, and for the free and unrestrained navigation of its waters.
f I. Before examining the authorities upon which the counsel relies in support of his proposition, it may not be amiss to remark, that the tax in question is not levied exclusively on citizens of other States or foreigners arriving in New Orleans. A citizen of this State on his return, after a temporary absence, is equally liable to it, whatever may have been the motive of his absence, whether business or recreation. It is also not to be overlooked, that the tax is not payable by the captain, officers, or crew of the vessel or steamboat. Those persons, whose labor is required in navigating the vessel, and who may be regarded as it were, as among the instruments of commerce, are exempted from the tax. It is levied exclusively on passengers, on their arrival in the city of New Orleans. It is, therefore, a tax neither upon the cargo, nor the vessel, nor on those engaged in navigating it. It does not obstruct or burden the commerce of the country, and it cannot be regarded as a regulation of commerce, either with foreign countries, or with the other States. In the enactment of the statute imposing this tax, the Legislature cannot be said, therefore, to have usurped any of the powers exclusively vested in Congress, *215 to regulate commerce among the States or with foreign nations. Is it repugnant to, or inconsistent with, any law enacted by Congress, regulating the commerce of the United States? 1
The case of Gibbons v. Ogden turned upon the question, whether a statute of New York granting to certain persons the exclusive privilege of navigating the waters of that State with vessels propelled by steam, was repugnant to the acts of Congress regulating the coasting trade between the States. It was decided, that the power to regulate commerce extends to the regulation of navigation; that it is exclusively vested in Congress, and embraces every species of commercial intercourse between the States and with foreign powers ; and that the laws of New York grant ing the exclusive privilege, were in collision with those acts of Congress which regulate the commerce between the States, or the coasting trade. That celebrated controversy commenced by an injunction issued by the Chancellor of New York, restraining Gibbons from navigating with his steamboats between New Jersey ánd New York, notwithstanding the enrollment and license of his boats as coasting vessels. The State court sustained the grant to Livingston and Fulton, and the question was taken before the Supreme Court of the United States, by writ of error£.In that case it is obvious, that the right conferred by the act ol Congress on licensed vessels, to carry on commerce between the ports of one State and those of another, was impeded and impaired by the State law, which established essentially a regulation of commerce, inconsistent with that which Congress had thought proper to enact. The decision does not, therefore, bear directly upon the case now before the court, which seems to involve rather a question of State taxation, than one which concerns the regulation of commerce. ~j The distinction between the two classes of cases is obvious. ‘ "The power to regulate commerce between the States and foreign nations, is exclusively vested in Congress. The power of taxation resides in the States to an unlimited extent, except so far as restrained by the Federal or State constitutions. This very difference creates the essential difficulty of cases like the present. If a State tax be inconsistent with any regulation of commerce by the sovereign authority of the Union, by imposing burdens, or restrictions, or conditions, unknown to *216 the law of Congress, the act creating such a tax must be regarded as unconstitutional and void. The States are forbidden by the constitution to lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing their inspection laws. In the case of Brown v. The State of Maryland, the Supreme Court of the United Statesheld, that an act of the Legislature of that State was unconstitutional and void, which forbade the selling of anypackages of imported goods until the importer should have obtained a license, for which fifty dollars was to be paid to the State.
The Chief Justice in delivering the opinion of the court, remarks, that “ any penalty inflicted on the importer, for selling the article in his character of importer, must be in opposition to the act of Congress which authorizes importation. Any charge on the introduction and incorporation of the articles into and with the mass of property in the country, must be hostile to the power given to Congress to regulate commerce, since an essential part of that regulation, and principal object of it, is to prescribe the regular means of accomplishing that introduction and incorporation. The distinction between a tax on the thing imported and on the person of the importer, can have no influence on this part of the subject. It is too obvious for controversy, that they interfere equally with the power to regulate commerce.” 12 Wheaton, 419.
The court, in the same case, admit the power of the States to tax their own citizens or their property within their territories; but they say, they cannot admit that it may be so used as to obstruct the free course of a power given to Congress. “ The taxing power of the States must have some limits. It cannot Ireach and restrain the action of national government, within its proper sphere. It cannot reach the administration of justice in the courts of the Union, nor the collection of taxes of the United States, or restrain the operation of any law which Congress may constitutionally pass.” Loco citato.
A further illustration of this principle may be found in the case of Weston et al. v. The City Council of Charleston, 2 Peters, 449, in which .it was settled, that a State tax upon stock issued for loans made to the United States is unconstitutional.
*217 The authority of the States to tax persons and things for revenue, rather than as a means of regulating commerce, for sanitary purposes, and with a view to ascertain the quality of different products before their exportation by inspection, has never been questioned. To use the language of the court in the case of Gibbons v. Ogden, in speaking of such laws : “ They form a portion of that immense mass of legislation, which embraces every thing within the territory of a State, not surrendered to the general government; all which can be most advantageously exercised by the States themselves. Inspection laws, quarantine laws, health laws of every description, as well as laws for regulating the internal commerce of a State, and those which respect turnpike roads, ferries, &c., are component parts of this mass.”
The concurrent power of taxation residing in the Union and in the Sta^/^ÍfeWe^tcr^éa3.to a collision, añcTTí’is" ceffainly difficult to dráwlEe iine which separates these, powers. It was justly remarked by Mr. Justice Johnson, in delivering his separate opinion in the case above mentioned: “ That the line cannot be drawn with sufficient distinctness between the municipal powers of thepnglgjidr^e^ffommercial powers of the other. In some points they meet and blend sd*^~scarcdTto^dmit of a separation^ Witness the laws of Congress requiring'® officers to reipect the inspection-laws of the States/and' to'aid in enforcing the health laws; that which surrenders to the States the superintendence of pilotage ; and the many laws passed to permit a tonnage duty to be levied for the use of their ports.”
It cannot be expected of us to lay down a general rule by which to test, in all cases, the constitutionality of a State tax.'j The one which we are now considering was imposed for the support of a great public charity, which the people of all the States whose citizens trade with, or visit this great commercial emporium, have an interest in supporting. It falls indiscriminately upon the citizens of Louisiana and other States, and foreigners who arrive in New Orleans, either by sea or our rivers and lakes. Those who land above or below the city are exempt from the tax. It is not levied either upon the crew of the vessel or the cargo. It offers no impediment to the free navigation of our waters, nor to the entry of the vessel, or the disposition of the cargo, according *218 to the laws of Congress. It affects not the commercial classes alone, nor those who visit the city upon mercantile pursuits, but all without distinction. No adjudicated case has been brought to our notice, nor are we acquainted with any analogous to the present. We are not prepared to say that the tax in question is in collision with any regulation of commerce established by Congress, or that it interferes with the action of Congress in the exercise of its delegated powers, j
II. The argument drawn from the provisions of those acts of Congress which provided for the free navigation of the waters of Louisiana, as a condition upon which that territory was admitted into the Union as a State, is not conclusive. Those laws, since Louisiana has become a part of the Union, like the treaty of cession, having done their office, have no longer any application. They were in the nature of a compact, and since that period the free navigation of our rivers and lakes, like that of the Chesapeake Bay or the North River, depends not so much upon those acts of Congress, as on the general principles of the federal compact to which this State has subscribed. We see nothing in the act imposing the tax in question, which restrains that freedom, or renders the navigation of our waters more onerous.
The high court, whose decisions we are-in the habit of regarding as truly expounding the constitution, in the case of the Providence Bank v. Billings et al., recognized the power of State taxation as co-extensive with its territory, and laid down the principle that the surrender or abandonment of such right could not be presumed ; that it resides in government as a part of itself, and need not be reserved, where property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies ; that the power may be abused, but the constitution of the United. States was not intended to furnish a corrective for every abuse of power, which may be committed by the State governments. 4 Peters, 544.
Upon the whole, although we are not satisfied that the statute imposing the tax in question is unconstitutional, yet the defendant denies generally his liability to pay the tax levied Apon his passengers; and this part of his defence requires an examination of the grounds on which the State bases its right to recover of him.
*219 I The act makes it the duty of the captain to collect the tax, and affords him the means of coercion; but it imposes no penalty-in case of his neglect or refusal to collect. If it did, we should be inclined to doubt whether it would not amount,to such a restriction or burden upon the navigation of our waters, by passenger boats, as would be in collision with the laws of Congress. But the act, in our opinion, creates an office, and the captain is made a State officer, for the purpose of collecting. He is not, in our opinion, obliged to accept the office and perform its duties. If he had voluntarily undertaken to collect, and had, in fact, received any part of the tax, an action would lie to compel him to pay over, but this is not alleged. He is sought to be made liable for neglecting to perform a duty imposed by the statute; and the obligation to pay the tax himself, is not denounced as the penalty for his refusal. The courts cannot supply that penalty, and condemn the captain to pay the tax assessed upon his passengers, for not having done what, in our opinion, he was not legally bound to do. j The only duty which the statute imposes upon the captain, under a penalty, is that of exhibiting his manifest, or list of passengers, to the collector of the Charity Hospital, j
It is, therefore, ordered and decreed, that the judgment of the District Court be reversed; and that ours be for the defendant, with costs in both courts.