IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT JUNE TERM, 1862.

~~~~~~~~~~~~

THE NEWARK CITY BANK v. THE ASSESSOR OF THE FOURTH WARD OF THE CITY OF NEWARK.

CHARLES A. WALLEN v. THE SAME.

1. The bonds issued by this state under the act of 1861 (*Laws* 1861, *p.* 554,) are exempt from taxation when held by individuals or corporations.
2. The stocks and securities issued by the United States under the power to borrow money are exempt from state taxation in the hands of individuals or corporations.
3. Stocks in foreign corporations, held by individuals resident in this state, are personal estate within this state, and subject to taxation.
4. Corporations are entitled to have deducted from the amount of their capital stock paid in, and accumulated surplus, the amount of the bonds of this state and the stock and public securities issued by the United States owned by them at the time of assessment.

On *certiorari.* In matter of assessment.

Argued before the CHIEF JUSTICE and Justices ELMER, VREDENBURGH, and VAN DYKE.

For the plaintiff, *J. P. Bradley* and *A. O. Zabriskie.*

For the defendants, *Frelinghuysen, Attorney-General.*

VOL. I.                    A                        13

CHIEF JUSTICE. These *certioraris* have been regularly issued and returned to this court, and have brought before us the records of assessments just made against the respective plaintiffs. The duplicates still remain in the hands of the assessor, the time for their return to the collector not having arrived. There has, of course, been no time for an appeal to the commissioners of appeal to correct the errors complained of. No motion was made to dismiss these *certioraris* as improvidently and ·prematurely issued; on the contrary, they have been elaborately argued by the counsel of the respective parties upon the merits, for the avowed purpose of obtaining at this time, before the assessments are completed throughout the state, the opinion of this court upon the important questions involved, to avoid the great public embarrassment that might ensue if, at this time, assessments should be made upon erroneous principles, and be, for that cause, generally reversed. Under these circumstances, we are not inclined, of our own motion, to dismiss these suits, but shall proceed to dispose of them upon their merits.

The cases were heard together, and as they involve the same points, it will be convenient to consider them at the same time.

In the City Bank case, the assessor returned that he had assessed that corporation—

On its capital stock,     .     .     .     .     . $350,000 00
On its accumulated surplus,     .     .     .     60,083 11

Total,     .     .     .     .     .     .     . $410,083 11

·That the bank claimed a reduction of the same, because, as was shown and proved to the assessor, ·the capital and accumulated surplus comprised, among other things, United States 5 per cent. bonds—

Due in 1865,     .     .     .     .     .     .     $5,000 00
United States 6 per cent. 1 year certificates,     122,000 00
United States 7 3-10 per cent. treasury notes, ·     73,000 00
Bonds of the state of New Jersey, under act of
February 16th, 1861,     .     .     .     .     7,000 00

Total,     .     .     .     .     .     .     $207,000 00

Which deduction the assessor disallowed, as contrary to law.

In the Wallen case, the assessment is—

| | |
|---|---:|
| Upon real estate, . . . . . . | $20 00 |
| Personal estate, . . . . . . | 105 00 |
| Total, . . . . . . . | $125 00 |

The personal estate consisted of—

| | |
|---|---:|
| Bonds and mortgages, . . . . | $3,500 00 |
| 20 shares of capital stock, Ocean Bank, city of New York, . . . . . . | 2,000 00 |
| 10 shares New York Central Railroad, . . | 1,000 00 |
| United States demand notes under the act of congress, February 25th, 1862, . . . . | 2,000 00 |
| New Jersey state bonds, under act of May 10th, 1861, . . . . . . . . | 2,000 00 |
| | $10,500 00 |

The following points are involved, and must be decided :

1. Are the bonds of this state in the hands of Wallen taxable ?

2. Are the United States bonds and notes in his hands taxable ?

3. Are the railroad and bank stocks held by him taxable, being stocks of corporations without this state ?

4. Is the bank taxable for all or any of the items disallowed as deductions from the capital stock and surplus, *viz.*, the New Jersey state bonds and United States bonds and notes ?

The act of March 28th, 1862, introduced into our system of taxation extensive and radical alterations, for the purpose of more equally distributing upon persons and property the increased burthen of taxation, rendered necessary by the war for the preservation of the Union. The main design of these alterations was to extend, as far as practicable, the list of ratables, and to diminish, as much as possible, the number of non-taxable items composing the wealth of individuals and corporations, and in some instances to change

the mode of assessing that wealth, so as to reach it with more certainty than heretofore.

One of the most striking alterations is, that taxing the corporations themselves, instead of the stock in the hands of the stockholders, when they are corporations created by the state, and taxing their business done here, or capital employed here, when existing under charters granted by other states.

Out of these alterations spring more or less of the difficulty to be found in the solution of the questions presented for decision.

As to the first point, the taxability of the bonds of this state, there can be no doubt. By the act authorizing their issue they are expressly exempted from taxation, for the purpose of increasing their negotiability, and have been issued bearing on their face a statement that they are free from taxation.

The express contract of the state, that they shall be exempt (*Laws of* 1861, *p.* 555,) is enough to settle this question; and even as to those issued after the passage of the act under consideration the same rule must prevail. This exemption of these bonds was not intended to be affected by the general words of the act of 1862. New Jersey has always preserved unsullied her good faith, whenever it has been pledged, and her courts will never, by any nice refinement, open a way by which it may be violated.

2. The bonds and other evidences of debt issued by the United States, and held by Wallen, are, in his hands, exempt from taxation by state authority.

The case of *Weston and others* v. *City of Charleston*, 2 *Pet.* 449, is a decision directly upon this point, and, in my judgment, must control this case. That decision was not made by the court to turn upon the point, whether the taxation attempted by state authority was discriminating against the bonds of the United States, or whether they were taxed in the aggregate of the taxpayer's wealth. In the opinion of Chief Justice Marshall, the exemption of these bonds from

taxation by state authority was made to rest upon the ground that they were the means employed by congress, under the expressly granted power to borrow money, to effect that object; that a tax upon them was in substance and effect a state tax upon the exercise of one of the functions of government.

The tax in question is a tax upon the contract subsisting between the government and the individual; it bears directly upon that contract, while subsisting and in full force. The power operates upon the contract the instant it is framed, and must imply a right to affect that contract. In the exercise of the power to borrow money, the government applies directly to its citizens for the loan, without the intervention of state authority; it seeks no aid from the state, and is exempted from all control.

For this purpose it is supreme, and may make such contract as congress authorizes with the public creditor. It is essential to its exercise that the power should be entirely untrammeled by any burthen thrown upon it by state authority.

The same rule which would permit the credit of the United States to be taxed *inter alia* would logically permit its taxation by itself. It is not taxable because it does not exist by state permission, and is not protected by state laws, or subject to state sovereignty, by state legislation or otherwise. *McCulloch* v. *The State of Maryland*, 4 *Wheat.* 316.

To say that if only taxed in the bulk of the wealth of an individual, at the same rate as the rest of his property, there is no discrimination against the bonds, and that therefore the power to borrow money is not interfered with or in any way crippled, does not touch the principle upon which the exemption of the national credit from state taxation rests. It only disposes of the argument *ab inconvenienti* against such taxation. It cannot be taxed at all because it is the contract of the national government, which, as to this, is paramount to that of the state over the same citizens. A taxation of the contract is an indirect taxation of the parties to

it. A state cannot tax a function of the federal government, whether dormant or in exercise, or the necessary means for its exercise, whether a parol contract or one under seal. The inexorable law of political economy is, that the taxation of a sum of money loaned falls ultimately upon the borrower. The money loaned is in the federal treasury, the lender and his assigns have nothing but a voucher showing this fact. It is difficult to assign any better reason why a sum of money due the government from the collector of a port or of direct taxes may not be taxed by the state as part of the private property of the collector. It is not taxable because it is the money of the federal government, and not that of the collector. If the state may take it by the taxing power, it may take the whole or part at discretion.

It needs no argument to prove that, on such a theory, the existence of the federal government would be imperilled. It might be destroyed without treason or rebellion.

I am not satisfied with the reasoning of Denio, Judge, in *The People* v. *The Commissioners of Taxes and Assessments*, 23 *N. Y. Rep.* 192, in which the majority of the court concurred, holding United States bonds taxable, for the reasons I have already given. The positions I have stated were not, in *Weston* v. *City of Charleston*, obiter dicta; they were the very grounds of the decision.

The discriminating mind of Marshall could not have failed to perceive that the tax in that case was not one upon United States stock only, but upon all bonds of a certain grade, *including these*. He never would have been content to put the decision of that case on such narrow grounds.

That cannot be a sound rule which makes the thing taxable when taxed with the rest of a man's property of every kind, but untaxable when only taxed in common with a part. The court could not determine how universal a tax law must be to be operative, or how partial to be inoperative, nor inquire into the intent with which the tax was imposed. The Supreme Court of the United States had no alternative except to say the federal bonds cannot be taxed at all, or that to tax

them was unlawful, unless all other property was taxed at the same time, or when the design was to cripple the borrowing power of the federal government, which would lead, upon a question of constitutional law, into a vexatious inquiry into a mere intention, which could never be ascertained.

In addition to this view of the case, which seems conclusive, if the national credit in the hands of an individual is not of itself, from the nature of things, free from state taxation, it is clearly in the power of congress to make it so, either in the act authorizing the loan, or in a subsequent act. The power to make the loan carried with it the power to make all laws necessary for its success and protection when made. Congress must have the power to define the relations of citizens to the loan, and to exempt it from all state interference. The right of congress to exempt a national loan from taxation would seem as clear as that of a state to exempt its own. Both should have that power for very obvious reasons—the existence and exercise of the power might be vital to the success of the loan.

By the act of 25th of February, 1862, passed since the decision of the New York Court of Appeals, and probably in view of it, to correct the evils flowing from it, congress has, in the clearest possible language, declared that all stocks, bonds, and other securities of the United States, held by individuals, corporations, or associations within the United States, shall be exempt from taxation by or under state authority.

If, therefore, these bonds and securities have been taxed in the hands of Wallen, he is entitled to relief.

By act of March 28th, 1862, under consideration, it clearly appears that the bonds and securities are designed to be taxed as personal estate, and that the tax is not to be considered as either a capitation tax or an income tax.

The seventh section of the act declares that all real and personal estate within this state, whether owned by individuals or corporations, shall be liable to taxation, &c.

The fifth section of the act declares that the persons and

property herein after specified shall be assessed and taxed as herein after provided.

The sixth section regulates the imposition of the personal or poll tax. Then follows the seventh section, already cited.

It is apparent, from these citations, that the bonds and securities are themselves taxed as personal estate, and that the tax is upon them as property.

As to the third point stated, I think Mr. Wallen is taxable upon the foreign railroad and bank stock.

The power of the legislature to tax extra territorial stocks, when owned by persons taxable in this state, has not been denied. It has been deliberately held by this court in the case of *The State* v. *Branin,* 3 *Zab.* 484 ; *The State* v. *Bentley,* 3 *Zab.* 532. The only question is, has it been done by the act of 1862?

Several reasons have been assigned, from the provisions of the act, to show that, by it, taxation is strictly confined to personal estate within this state.

It is urged that, by the fifth section, taxes are to be laid on the persons and property in the act specified, as therein provided ; that the seventh section expressly declares that all real and personal estate within this state, whether owned by individuals or corporations, shall be liable to taxation, in the manner and subject to the exemptions therein specified, that is, in the act specified. It will be perceived that the argument goes to this extent, that no personal estate of any kind can be assessed unless within this state.

It would certainly be a remarkable result if the legislature, in its efforts to remodel the tax laws, so as to extend the range of taxation, and bring within its reach many things before exempt from taxation, had, by some strange oversight, exempted a class of property subject to taxation until the passage of the supplement of 1857. *Nix. Dig.* 802. When the act of 1862 was passed, the laws in force regulating the subjects of taxation were the acts of 1846, 1854, and the supplements of 1857 and 1861, the former supplement exempting from taxation all public stock and other property owned by

residents of this state subject to taxation in any other state, on which taxes shall actually be paid, the latter, the funds of certain charitable associations. *Nix. Dig.* 851 (802). The second section of this act of 1854 provided that all real and personal estate within this state, whether owned by individuals or corporations, should be liable to taxation.

The third section defined the meaning of the term real estate, as used in the act, to include all lands, all water power thereon, all buildings or erections thereon affixed to the same, trees and underwood growing thereon, and all mines, quarries, and all fisheries.

The fourth section defined the term personal estate, as used in the act, to include goods and chattels of every description, including steamboats and other vessels, money, debts due or owing from solvent debtors, whether on contract, note, bond, or mortgage, public stocks, and stocks in corporations, whether within or without this state.

The twenty-first section of the act of 1862 declared the first, second, tenth, and eleventh sections of the act of 1854, and also the fourth article of the fifth section of said act, and also the supplement of 1857, and all other acts and parts of acts, whether special or local, or otherwise inconsistent with the provisions of this act, repealed. This repealing clause, it will be seen on an examination of the act of 1854, leaves the third section, defining the meaning of the term real estate, the fourth section defining the meaning of the term personal estate, the first, second, and third subdivisions of the fifth section, specifying the property exempt from taxation, unrepealed.

All the sections and parts of sections, supplied and altered by the act of 1862, are thus repealed; and the remaining sections of the act, thus pointedly left unrepealed, relates to matters unregulated by the provisions of the act of 1862, such as the place where the personal tax shall be levied, the mode of making out the duplicates, the mode of assessing trustees, executors, administrators, and guardians, &c. Nothing can possibly be clearer than that the legislature

meant to say that the unrepealed portions of the act were not substantially inconsistent with the act of 1862, and should stand, except where modified by that act. If this be not so, there is no provision exempting the property of the United States, this state, counties, townships, cities, and boroughs, &c., from taxation, and many important matters are left without regulation. These acts are all supplements to the act of 1846, are all in *pari materia*, and to be construed together; and when one of these acts declares that a certain word or phrase is to be construed as meaning a certain thing in this act, the term this act, or equivalent language, means the original act and its supplement. In contemplation of law, this act and its supplements are but one act for the purpose of construction.

It results from this that the definitions of the terms *real and personal estate*, used in the act of 1854, are part and parcel of the act of 1862, and that stocks of corporations and public stocks, whether within this state or out of it, are taxable. If some new provision has been introduced in the act of 1862, plainly inconsistent with, and intended to supply the place of a corresponding provision of the act of 1854, the act of 1854 is *pro tanto* repealed. Of such a character is the provision of the 8th section, taxing domestic corporations and exempting their stockholders from taxation. By the act of 1854, foreign stocks are declared to be personal estate within this state, when owned by residents here. There is nothing in the act of 1862 inconsistent with this construction.

The act of 1854 declared personal estate *within* this state taxable, as the act of 1862 also does. The act of 1854, in substance, declares foreign stocks, when owned here, to be, for the purposes of taxation, within the state, and thus closes the door against legal casuistry. If anything could make this point clear, it is the express repeal of the supplement of 1857, exempting foreign stocks, when taxed abroad and the taxes paid, from taxation here.

The fourth point remaining is one of more difficulty; but I

Newark City Bank v. The Assessor.

think the City Bank, upon a fair construction of the act, is exempt from taxation upon its state bonds and United States securities. The difficulty arises from the peculiar phraseology of the 8th section of the act, " that all private corporations of the state, &c., shall be and are hereby required to be respectively assessed and taxed at the full amount of their capital stock paid in and accumulated surplus; but any real estate which such corporations may lawfully own in any other state shall not be liable to be estimated in such accumulated surplus; and the persons holding the capital stock of such corporations shall not be assessed therefor."

If this could be regarded as a tax upon corporations, *as such,* and not upon their property, they could not claim exemption for non-taxable property held by them. Although the act might be oppressive, no reason is perceived for doubting its validity. It is competent for the legislature, independent of any contract between them and the state, to tax them at discretion. But I think the act cannot be so regarded. The 8th section expressly exempts from estimation, as a part of the surplus, real estate owned in another state, and the 13th section provides for the taxation of the real estate of private corporations in the ward or township where it is located, and directs the amount of the assessment to be deducted from the amount of the capital stock and surplus and funded debt, or of the valuable assets of the corporation. These provisions, in connection with the 8th section, show that the tax designed by the act was a tax upon *the property* of the corporation, not *its franchise.* The direction of the act is, in substance, that the amount of their personal estate, upon which the tax is to be laid, is to be conclusively ascertained by the amount of their capital paid in and accumulated surplus, deducting the value of their real estate owned in this state from the sum total, and their foreign real estate, when lawfully owned, from the surplus. The act was designed, doubtless, to cut off all other deductions, and to furnish a plain rule by which to assess their property, without inquiring into their investments.

If the provision is equivalent to one declaring, that from this amount no deduction shall be made for New Jersey state bonds or United States securities issued by the government under the power to borrow money, but that they shall be included in the amount at which they are to be taxed, it presents the question, can the legislature, consistently with the constitution of the United States, enact that corporations shall be taxed for the United States stocks and securities they hold? Nothing can be plainer than that it cannot. What it cannot do directly it cannot by mere circumlocution. A law taxing the aggregate, taxes all the parts of which it is composed, as effectually as if the parts were particularly mentioned. The act of congress exempts these securities, when held by corporations as well as by individuals, from taxation by state authority. If it were necessary, I should hold this section, so construed, so far void as in conflict with the constitution of the United States. This may be avoided by holding that all property held by them, by other acts (not capable of being repealed by this act) or by constitutional provisions exempt from taxation, are impliedly excepted, and to be deducted from the amount of the capital stock and surplus. The act is not to be interpreted so as to make it conflict with constitutional provisions where that can be avoided. As we have already seen, the whole series of acts on this subject are to be considered as one, and construed together. A cemetery company, although having a stock paid in, would, under the second subdivision of the fifth section of the act of 1854, be entitled to have its graveyard, not exceeding ten acres, exempt from taxation. So would a library company its library, an academy or seminary of learning its property, because the 5th section of the act of 1854 is unrepealed and in full force, as modified by the 17th section of the act of 1862. And yet, if we adhere to the strict words, "full amount of their capital stock and accumulated surplus," these exemptions cannot take effect.

The broad words of the 8th section are not to be understood without qualification by other parts of the act and the

other acts on the same subject. By parity of reasoning, all other property protected by constitutional provision is also to be excepted.

We ought not to assume that the legislature intended to lay a tax on property by the constitution and laws of the United States exempt from taxation, where the intent has not been declared in unequivocal language. That is not the case here.

The bank is entitled to a deduction for the stock issued by this state held by it, also for bonds and notes of the United States in its hands owned by it.

To recapitulate my conclusions :

1. The bonds issued by this state under the act of 1861 are exempt from taxation when held by individuals or corporations.

2. The stock and securities issued by the United States under the power to borrow money are exempt from taxation in the hands of individuals or corporations.

3. Stocks in foreign corporations, held by individuals resident in this state, are personal estate within this state, and subject to taxation.

4. Corporations are entitled to have deducted from the amount of their capital stock paid in and accumulated surplus, the amount of the bonds of this state and the stock and public securities issued by the United States owned by them at the time of assessment.

ELMER, J.  The questions arising in these cases are—

*First.* Are the stocks and bonds of the United States taxable by this state?

As the act of congress declares, in express terms, that they shall not be taxed by a state, this is simply a question of constitutional power. Upon this question, we are bound by the decisions of the Supreme Court of the United States, which has held that the power " to borrow money on the credit of the United States " carries with it, by necessary

implication, the power to do so free from the control of the states. *Weston* v. *City of Charleston*, 2 *Peters* 249.

Whatever may be our individual opinions on the reasoning of the court on this and the preceding cases, this decision is the law of the Union, and however inconvenient such an exemption may prove, it is our duty to submit to the paramount power of congress over a subject belonging exclusively to the general government. It is true, as suggested by the attorney general, that a part of this tax is to be assessed and collected to enable the state to pay its quota of a direct tax of twenty millions of dollars, imposed by congress, and assumed by this state. The act of congress provides that any state or territory may lawfully assume, assess, collect, and pay into the treasury of the United States its quota, in its own way and manner, and through its own officers, and may use for this purpose the last, or any subsequent valuation list or appraisal made by state or territorial authority. The act exempting these stocks and bonds is subsequent in time to the direct tax law. But were it otherwise, I do not see how this tax law can affect the question. So far as it professes to confer any power on the legislature of this state, it is destitute of constitutional authority. The powers of the state legislature are derived directly from the people of the state, and not from an act of congress. It has not imposed this tax by virtue of the act, but by virtue of its general power of taxation. A part of the money raised has been paid into the treasury of the United States, for a purpose in which the people of this state have a deep interest; but it is not less a state tax for state purposes, and the sum paid into the treasury is so mingled with the sums raised for other purposes that they cannot be separated. In my opinion, the bonds and stocks of the United States are exempt from taxation by the state for any purpose.

*Second.* Are the bonds issued by this state taxable?

Upon this question there is no room for doubt; they are expressly exempted by the law of the state, and have this exemption printed on them. Even if issued since the tax

law was passed, they bear the pledge of the state that they shall not be taxed; a pledge there is no reason to suppose the legislature meant to violate.

*Third.* Is a bank or other corporation, by the true construction of the eighth section of the recent tax law, entitled to have the amount of such bonds and stocks held by them deducted from the capital stock and accumulated surplus, so as to be taxed only on the balance?

This question is far more difficult of solution than the others. The explicit words are, that private corporations, with certain exceptions, are required "to be respectively assessed and taxed at the full amount of the capital stock paid in and accumulated surplus." This would seem to mean that no inquiry is to be made as to how the capital paid in and the surplus may happen to be invested; for it is beyond doubt that the state legislature has the constitutional power to tax corporations or classes of individuals, by an arbitrary rule in the nature of a poll tax, without regard to their property. The question is, whether the present law, fairly interpreted, shows such a purpose? It is plain that, with the exception of the poll tax provided for in the sixth section, the act is framed upon the principle of assessing the tax required on real and personal estate. Such is the language of the seventh section; and the thirteenth section provides that the real estate of corporations shall be assessed to said corporations where they are situate, and the amount of such assessment shall be deducted from the amount of the capital stock and surplus. We cannot presume that the legislature meant to disregard its own pledge, upon the faith of which these corporations have taken the state bonds, nor that they meant to violate an act of congress. It was urged, on behalf of the state, that these stocks and bonds are not in fact property, but only represent property loaned to and used by the government. The tax law, however, treats them as property, as it does other choses in action; and those laws which in terms exempt them from taxation, do so on the supposition that they would be taxed, if taxed at all, as property.

To tax them therefore as property, in whosesover hands they may be, or by whatever device, is to disregard the exemption. This I cannot suppose the legislature meant to do; and if they did, it was beyond their power. Nor is it forgotten that it does not appear, and probably is not the fact, that the corporation prosecuting this *certiorari* has by any formal statement of its accounts, or in any way vested its capital and surplus specifically in the stocks and bonds. They are doubtless in the same situation as discounted bills or other loans made by it, which in the aggregate largely exceed the capital and surplus. But this cannot alter the real situation of the case. The debts due by the bank are entitled to be deducted from its assets, so far at least as loans in excess of the capital paid in are concerned; and this being done, it follows that the stock and bonds in question are in fact a part of the surplus capital. I think we cannot escape the conclusion that corporations are entitled to deduct from their capital and surplus the amount of United States and New Jersey bonds owned by them when the assessment is made.

*Fourth.* Are the stocks of corporations in another state taxable in this state?

It is insisted, for the prosecutor, that the seventh section of the act declares that all real and personal estate within this state, shall be liable to taxation, and that, as all inconsistent acts are repealed, no personal property but such as is actually within this state is now to be taxed. But the repealing clause, the 21st, in terms repeals the second and several other sections of the act of 1854, and does not repeal the others. Among those not repealed is the fourth section of that act, which declares that "the term personal estate, as used in this act, shall be construed to include goods, &c., public stocks, and stocks in corporations, whether within or without the state." And to make the legislative intention more plain, the act of 1857, which modified the fourth section of the act of 1854, is expressly repealed. This leaves no room for construction or doubt. When certain named sec-

tions are declared to be repealed, it necessarily results that the others are meant to be left in force, and are thus in effect declared not to be inconsistent with the new act. The fourth section of the act of 1854 is thus made a part of the act of 1862, and explains and enlarges the meaning of the seventh section, just as originally it explained and enlarged the second section of the act of 1854, for which the seventh section of the act of 1862 is substituted, being slightly altered. I am therefore of opinion that the value of stocks in corporations of other states is to be added to other personal property, and taxed in the same manner.

VREDENBURGH, J., concurred, except as to the exemption of United States bonds and stocks. VAN DYKE, J., concurred, except as to taxation of stocks held in corporations in other states.

CITED in *Mechanics and Traders Bank* v. *Bridges, infra* 117 ; *State, Mutual Life and Casualty Co., pros.,* v. *Haight, Collector,* 5 *Vroom.* 130 ; *State, International and Life Assurance Co., pros.,* v. *Haight, Collector,* 6 *Vroom* 280.