THE STATE, JOHN T. FOX AND GEORGE W. EDGE, PROSECUTORS, v. JOHN B. HAIGHT, COLLECTOR OF JERSEY CITY.

1. The tax laws of this state are not inoperative as applied to shares of stock in the national banks, on the ground that such law would interfere with the operations of such institutions, as the fiscal agents of the government of the United States.

2. The taxation of a shareholder, on account of his shares of stock in a national bank is, *pro tanto*, a burthen on so much of the capital of such bank as exists in the form of bonds or other securities of the United States.

3. So far as the shares of stock of a national bank represent the value of its capital uninvested in national securities, such shares are not protected by constitutional barriers against taxation by the local government, and such taxation is to be entirely regulated by the laws of the state imposing it.

4. To the extent in which United States securities stand as the capital or property of such bank, the shares of stock owned by private persons can be taxed by state authority only with the sanction of congress, and in the mode prescribed by that body.

5. The 41st section of the act of congress provides, that all the shares of such banks held by individuals or incorporations, may be included in the assessments made by the state authorities, at the place where such banks are located and not elsewhere, at the same rate as other property is taxed.

6. The word "place," as used in this section, *held* to refer to municipal locality, and to apply to the smallest district possessed of the power of taxation, in which the banking-house may be located.

On *certiorari*.     In matter of taxation.

,The state of the case agreed upon exhibited the following facts, *viz.*, that the First National Bank of Jersey City, the First National Bank of Hoboken, and the National City Bank of Newark, were duly organized under the act of congress approved June 3d, 1864.

That the First National Bank of Jersey City was and is located and has its principal and only office and place of business in the second ward of Jersey City; that its capital stock is four hundred thousand dollars, and that it now has, and had at the time of the assessment of taxes in this case, the whole amount of its capital stock and one hundred and twenty-three thousand dollars more of its funds, invested in bonds and securities of the United States.

That the First National Bank of Hoboken is and always has been located in the city of Hoboken, in Hudson county; that its capital stock is one hundred thousand dollars, the whole of which is and was at the time of said assessment, invested in bonds and other securities of the United States.

That the National City Bank of Newark is and always has been located in the city of Newark, and has a capital stock of four hundred thousand dollars, one-half of which is and was at time of said assessment invested in the bonds and other securities of the United States.

That the plaintiff, John T. Fox, had for a year last past resided in the first ward of the city of Jersey City; that he presented an account of his taxable property, duly verified by oath, to the assessor of said first ward, in the manner and within the time required by law; that he owns and then did own two hundred and thirty-four shares of the capital stock of the First National Bank of Jersey City, of the par value of one hundred dollars each, five shares of the First National Bank at Hoboken, and five shares of the National City Bank at Newark, each of like value, which, in said account, he claimed to be exempt from taxation ; that said John T. Fox was indebted to said First National Bank of Jersey City at the time of said assessment, in the sum of six thousand dollars, which fact he included and verified by oath in said statement, and therein claimed a deduction of the same from the amount of his personal property ; that said indebtedness was not deducted from the amount of his personal property, but that the whole, including said stock in said three banks so owned by him, were and are included in the assessment of his personal property.

That the said George W. Edge has for a year last past resided in the second ward of Jersey City, and owns five shares of the stock of said First National Bank of Jersey City ; that he lawfully made return of the amount of his property to the assessor of the second ward of Jersey City, claiming to have said five shares exempt from tax, but that they are included in the amount of personal property assessed to him.

For the state, *Attorney General.*

Contra, *A. O. Zabriskie.*

---

State, Fox and Edge, Pros., v. Haight.

---

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The principal and highly important question involved in this case is, whether the shares of stock held by individuals in a national banking association, created by the act of congress which provides for the organization of those institutions, can be taxed under the laws of a state ?

There are certain particulars comprehended in this legal problem, which have been so repeatedly recognized and solemnly adjudged by that high tribunal whose decisions, on questions of this character, must be considered final except to itself, that they are to be assumed as postulates in any argument on the subject.   That the congress of the United States is possessed, by force of the federal constitution, of the authority to place on foot these banking associations as the fiscal agents of the government; that as such agents they are beyond the sphere of all acts of state sovereignty which tend to hinder, embarrass, or defeat their operations; and that, consequently, a law imposing a tax on the business or transactions of such institutions is unconstitutional, was decided in the case of so much celebrity, of *McCullough* v. *State of Maryland,* 4 *Wheat.* 316.   And, in the same authoritative form, the adjudication in *Weston* v. *The City Council of Charleston,* 2 *Pet.* 449, established the no less important proposition, that a tax upon the stock of the United States in the hands of a citizen, is a tax on the power vested in congress to borrow money on the credit of the United States, which cannot be levied by or under the authority of a state, consistently with the constitution.   The truth, therefore, of these three propositions, and which form the basis of the discussion which follows, is assumed as incontestable—first, that congress was clothed with the power to authorize the formation of the corporations in question ; second, that the several states cannot, by taxation or otherwise, retard, impede, burthen, or in any manner control the operations of such corporations; and third, that a tax levied by the simple force of state sovereignty, on a loan made to the United States, is void.   On the present occasion it is only with the

application of these admitted principles that we have any concern.

From the admissions contained in the statement of facts agreed upon by the parties in the present case, it appears that only a part of the capital of some of the banks, the stock of which has been assessed in the hands of the plaintiffs' in *certiorari*, is invested in the securities of the United States, and the first point of inquiry which, consequently, is presented is, whether so much of this capital as does not exist in the form of such securities can be taxed by force of state sovereignty.

The only argument which was, or which perhaps can be urged against the exercise of this prerogative by a state is, that a national bank is one of the means employed to carry into effect the powers constitutionally inherent in the federal government; and that a tax by a state, to any extent on the property of such institution must, of necessity, affect such means, and thus tend to embarrass the administration of public affairs. It is clear, upon the principles already admitted, that if a tax of the kind supposed will have the effect attributed to it, the right to levy such tax does not exist, and that, as a consequence, an assessment of any part of the property of a national bank under the law of a state, though the part so assessed be not invested in exempted securities, would be nugatory. Whether, therefore, the state in its own right can tax that portion of the property of one of these banks, which in its own nature has no claim to immunity from taxation, must depend altogether on the solution of the question, whether the taxation of such property tends to embarrass or impede the operation of the bank, considered as an instrument of government.

It has been already remarked that an express decision of the Supreme Court of the United States exists, to the effect that a tax under state authority on the operations of a governmental bank, is unconstitutional. Such is the doctrine of *McCullough* v. *State of Maryland*. In that case it appeared that the state of Maryland had passed an act prohibiting all

banks not chartered by the state from issuing notes, except of certain specified denominations, which were required to be on stamped paper, to be furnished by the state at certain prices. This tax fell directly on the business of one of the branch banks of the United States, established in that state. The impost was special in its character, for it did not, in any manner whatever, affect the institutions of the state, and the consequence was, it discriminated, in its apportionment of the burthens of taxation, against institutions which had been erected to subserve the legitimate purposes of government. Such a tax was obviously illegal, as its direct and certain effect was to obstruct the movements of the public machine. But can it be said that a tax upon the shares of the capital stock of the bank as the property of private persons, will produce the same result? This is the precise point to be decided.

In the consideration of this subject it should be borne in mind that these banking associations are, in the nature of things, possessed of a dual character. They are instruments of government, but they are something more; they are agencies of commerce and private business. They receive the moneys of individuals on deposit; they loan their funds to private borrowers, and their notes, guaranteed by no public authority, form the basis of the bulk of commercial affairs. And so, in like manner, the capital of these institutions is not a public concern, but it is owned by individuals; and viewed in the light of such ownership, it is difficult to understand why it is not subject to the ordinary incidents and liabilities of property. That it is possessed of most of the rights and faculties of property, cannot be disputed. The capital of these banks, derived from the wealth of individuals, becomes represented in the hands of such individuals, by the shares of stock held by them, and these shares can be sold like any other chose in action or personal chattel. They can be pledged or mortgaged for private debt, or they can be sold, by hostile process, on execution. Why, then, shall they not be liable to the debt, which becomes due from their owner to the community in the form of a tax, for the protection

which is extended over him and his possessions? And if the private alienation of the stock or its seizure and sale on execution, is not an interference with the free operations of the bank in its public capacities, how can it be justly said that the taxation of such stock will have that effect? The mere fact that government makes use, incidentally, of the property of the citizen in reaching its ends, does not, necessarily, invest such property with a public character for all purposes, nor absolve it from the regulations and incidents of ordinary proprietorship. There can be no doubt that private property employed in the use of the government would be protected, so far as might be necessary to prevent any hindrance to the performance of their legitimate functions by the public authorities, but beyond such limit, the necessity for protection ceasing, there would be no protection. Thus, the horses and vehicles owned by a citizen engaged in carrying the public mails could not be taken, even on judicial process, while actually in the public use, because such seizure would embarrass the operations of government in one of its essential departments. But it would scarcely be pretended that such property could not, at other times when not so employed, be seized on execution, or that it would not be liable to a state tax. Such seizure and such tax would both be lawful, on the obvious ground that such liabilities would not, in any material respect, affect the administration of public affairs; and on the same ground, it is conceived, that the tax on the shares of the stock in question is not unlawful, from the cause now under consideration. It would not be promotive of any public policy, to take away from the shares of the stock of these national banks, any of the ordinary incidents of property. Their capacity to be transferred, to be mortgaged, to be seized for debt, to be taxed, does not injuriously affect these associations for all the uses of the government, and hence such incidents exist. Such, evidently, was the view of this subject taken by the Supreme Court of the United States at the time of the decision of the case of *McCullough* v. *Maryland,* as will appear from the following ex-

tract from the argument, so justly famed, of Chief Justice Marshall: "This opinion," says that great jurist, "does not deprive the states of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank in common with the other real property within the state, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution in common with other property of the same description throughout the state. But this is a tax on the operations of an instrument employed by the government of the Union, to carry its powers into execution. Such a tax must be unconstitutional."

This expression of opinion, it is true, was aside from the immediate question then before the court; but it is not to be overlooked, that the case then under consideration, was to be placed on a general principle which was of transcendent importance, as it affected the relations of the states to the central government, and that it was hardly practicable to establish such general rule without considering and defining its extent and limitations. Under these circumstances, the view expressed in the quotation just given, appears to carry with it little less than the authority of express judicial determination. In reading the case, it is apparent that the court felt that they were erecting one of the pillars of constitutional law, and that every stone was to be hewn with the utmost care and skill. The principle established was, that a state tax imposed on the operations of a national bank was invalid; the limitation to this principle that was indicated was, that the taxation of the shares of such bank in the hands of individuals, was not invalid. It seems to me that this restriction of the principle of constitutional law thus settled, was the inevitable result from the reasoning on which the decision itself rested. My conclusion, therefore, on this head is, that the tax laws of this state are not inoperative, as applied to shares of stock in national banks, on the ground that such tax would interfere with the operations of such institutions, as the fiscal agents of the government of the United States.

And I cannot but think that this result should be universally approved, as being conducive to public utility and in strict harmony with the correlations of our complex system of government, composed as it is of separate sovereignties, supreme in their undelegated authority, and of a central power clothed with imperial attributes, pre-eminent within the sphere of its domination and representing the unity of the nation. That these banking associations, as the instrumentalities of this great national authority, contrived for the purpose of carrying into effect the powers conferred upon it by the constitution, are beyond the reach of extrinsic control, is entirely clear upon the ground just assigned, that the opposite doctrine would conflict with the operations of government; and so it would appear, on a similar consideration, should the taxing power of the states, as far as practicable, be maintained. The right to tax is one of the vital and essential principles of government. Each citizen must contribute his contingent to the expense of the enactment and enforcement of laws, protecting his person and regulating the acquisition and transmission of property. Destitute of the power to impose this burthen on the wealth of its own citizens, a state certainly could not, in any important respect whatever, perform the high office assigned to it in the national constitution, and a power therefore so necessary not only to its dignity but to its existence as a government, should not be impaired except on the plainest grounds. No part of it, most assuredly, ought to be taken away upon fanciful suppositions that its exercise in any particular mode will interfere, in some inappreciable degree, with the exercise of federal authority admittedly legitimate. Rules of law must have limits where their beneficial use ceases, else they invariably run into absurdity. All persons would probably admit that it would be irrational in the extreme to contend, that the salaries or private property of the officers of a national bank are protected from the imposition of state taxes; and yet such taxation is assailable by plausible argument, as an interference, in some minute degree, with the operations of

such banks, and perhaps almost to the same extent, that a similar burthen on the shares of the stock of such bank would occasion. Sound sense must be permitted to assign the boundaries to constitutional as to all other legal principles; and when we recollect that these national banking associations are evidently destined to absorb the entire banking capital of the nation, which constitutes so much of the wealth of the country, it seems to me clear, that the limitation on the exemption of these instruments of the general government against state taxation, should be established at the point above designated; a limitation which, while it marks and preserves the gradation of the authority of the nation and that of the several states, upholds, as far as possible, the legitimate and independent power of each.

The second point in constitutional law which it is necessary on the present occasion to decide is, whether the shares of stock in the national banks held by private persons, are exempted from taxation under the unassisted authority of the state, by reason of the capital of such bank, or any part of it, being invested in the securities of the loans of the United States.

In the case before referred to, of *Weston* v. *The City Council of Charleston*, the immunity from state taxation of securities similar to those owned by these banks, was established. The grounds of the decision were, that the contract to borrow money was a transaction essential to the important objects for which the government was created, and that the right to tax such contract to any extent, when made, must operate upon the power to borrow before it was exercised, and thus exert an influence on the contract. A direct tax upon the stock of the United States in the hands of a citizen was regarded as a tax upon the contract subsisting between the government and the individual—and, it was said, implied a right to affect that contract. The only question on this subject which can be considered open to discussion is, whether the taxation of the stock in the hands of the shareholder is a tax upon the securities which are owned by the bank?

that the tax could not be directly imposed on the bank has already been decided. Thus, in the case of *The Bank of Commerce* v. *New York City*, 2 *Black*. 620, under a state law taxing the capital of a bank according to its valuation, it was held that the portion of its capital which was invested in the securities of the United States was not liable to bear any portion of the burthen, upon the satisfactory reason that a tax *ad valorem* upon the aggregate of the property of the bank was a tax upon each part of such property. A view precisely similar, on this constitutional topic, was expressed by this court in a case antecedent by a few months to the determination of the case just cited. *Newark City Bank* v. *Assessor of First Ward of Newark*, 1 *Vroom* 13. And the same doctrine has been substantially reiterated in *The Bank Tax Case*, 2 *Wallace* 200.

But it was said on the argument that in all these cases the tax which was declared to be illegal, was laid not upon the shareholders but upon the bank itself, and thus a distinction is sought to be drawn. It is contended that it is the corporation and not the shareholders, that is the owner of the securities which are not susceptible of taxation; and that, consequently, the taxation of the shares of stock which the shareholders own, cannot be regarded as a tax on these securities which they do not own. But it seems to me this distinction is entirely too metaphysical to find any place in a science so practical as that of the law. Let us consider the matter for a moment. The object of the constitutional prohibition on the states against placing any burthen on a government loan was, because such burthen tended to repress the capacity of the government to borrow. It was, therefore, this effect of the state law which was to be obviated. But it seems impossible to deny that the effect upon federal securities held by a corporation of a tax upon the shareholder is precisely the same as the effect upon them of a tax, to the same amount, upon the corporation—that effect being, in both cases, to render such securities, to an equal extent, less valuable. In the one case such tax would be paid out of the

fund in the possession of the corporation before distribution, and in the other case by the stockholders, after such fund, in the form of dividends, had been received by them. The substantial result, in either way, would be the same, for the burthen of the tax must fall upon the corporators. So the exemption from taxation of national securities in the hands of the corporation is a gain, to the amount saved, to the stockholders, but this gain is exactly annulled if the shares of stock are taxed at their value. As the shares of stock must of necessity represent, in any estimate to be made of their worth, the entire property of the corporation, it seems to follow as an inevitable result, that when such shares of stock are taxed, that which gives them their value is also taxed. It is true that the legal title to the privileged securities is in the corporation, but the corporators are the beneficiaries, as much so as the *cestui que trust* is the real party in interest in the estate vested, as to title in his trustee. In all such cases the legal and equitable title must be treated as a unity, because they cannot be separated without injustice. To burthen the property of a *cestui que trust* first in his own hands as an equitable interest, and second in the hands of his trustee as a legal one, would be, obviously, double taxation; and so to exempt the equitable and burthen the legal estate, or *vice versa*, would be, not to give such property immunity from taxation, but to impose, as in the usual course, a single tax upon it. Whether the national bonds or other securities are taxed as a part of the legal property of the corporation, or as the equitable property of the stockholder, can make no difference so far as regards the effect of such taxation upon the power of the government to negotiate loans. The corect theory is, that the national prerogative to borrow money shall be free from all interference or obstruction, either direct or indirect, and it is not one mode of interference or obstruction with the exercise of such prerogative, but every mode which is interdicted by the constitution. I think the consequence must be that a tax upon the value of the shares of stock which derive such value, in whole or in part, from

national securities in the possession of the artifical trustee of the shareholder, must be held, in a constitutional view, to be equivalent to a tax upon the securities themselves. Such taxation would, as it seems to me, lessen the value of the public securities to the same extent precisely, as the taxation of them as the property of the corporation would do; and it is this depreciation of these securities by state taxation, which is the object of constitutional inhibition.

Upon the argument the attention of the court, on this head, was directed to the case of *The City of Utica* v. *Clarence Churchill and others*,* recently decided in the Court of Appeals in the State of New York, in which it was held, that it was the corporation as the legal owner of national bonds, and not the shareholder, that was entitled to claim the right to exemption from taxation inherent in such securities. But with the reasoning of that high tribunal on this topic, as contained in the opinion which was delivered, I can no more concur than I can with the general deduction from the premises which were deemed to be established by that reasoning. Those premises were that the taxation of shares of stock in a national bank, being the property of individuals, was, first, no interference with such bank as an instrument of government; and, second, that it was not a taxation of the national securities owned by the bank. Thus, by the establishment of these two propositions, it would seem that the shares of stock in one of those associations were entirely removed from the protection or control of the United States with regard to state taxation, and became, consequently, a part of the ordinary taxable property. Standing on this ground the result would seem to be unavoidable, that the shares of stock in question were subject, with regard to state taxation, to the state laws alone; but the Court of Appeals appear to have considered that the mode of the taxation of this species of property, though unprotected by the national constitution against the action of the local laws, was to be regulated by an act of congress. As a principle of constitutional law I cannot agree to this view, but must think that

* 33 *N. Y.* 161.

the act of congress, which prescribes the form of taxing the property in question, is admissible as an exercise of national authority, only on the hypothesis that such property is not taxable by the states without the permission of congress. My conclusion is substantially the same as that reached by the Court of Appeals in the case referred to, but it is attained by the rejection of the second premise in the argument of that court, *viz.*, that the taxation of the shares of stock was not a taxation of the property of the corporation.

In addition to the foregoing observations it is to be remarked that it has heretofore, on frequent occasions, been decided by the courts of this state, that there should be no such discriminations between the corporation and the stockholders, with regard to the ownership of the corporate property considered as a subject of taxation. Whenever the point has arisen under our state laws giving immunity from taxes to corporations, such provisions have been held to exempt the stock of the shareholders as well as the property of the corporation, from all burthens of the character specified. *The State* v. *Brannin*, 3 *Zab.* 484 ; *The State* v. *Powers*, 4 *Id.* 400.

And the same view of this subject was also taken by the Supreme Court of the United States in the case of *The United States* v. *The Appeal Tax Court*, 3 *How.* 133, in which the principle was maintained that a law giving exemption to certain banks from taxation, likewise exempted the stock of such banks as the property of individuals.

My conclusion then upon this second point is, that the taxation of a shareholder on account of his shares of stock in a national bank is, *pro tanto*, a burthen on so much of the capital of such bank as exists in the form of bonds or other securities of the United States.

Upon the whole subject thus considered, the general results are—first, that so far as the shares of stock of a national bank represent the value of its capital uninvested in national securities, such shares are not protected, by constitutional barriers, against taxation by the local governments, and that

such taxation is to be entirely regulated by the laws of the state imposing it; and, second, that to the extent in which United States securities stand as the capital or property of such banks, the shares of stock owned by private persons can be taxed by state authority only, with the sanction of congress and in the mode prescribed by that body.

It will be observed that up to this point the tax power of the state, considered in its intrinsic character without additions from other sources, has been the subject of examination; but as this power has been extended by an act of congress, it now becomes necessary to turn our attention to the subject in this new aspect.

By the first proviso in the 41st section of the act of congress, it is enacted in the words following: "That nothing in this act shall be construed to prevent all the shares in any of the said associations held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation, in the assessment imposed by or under state authority at the place where said bank is located and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such states."

The design of this provision seems clear. The framers of the act evidently entertained the opinion, that the shareholders would not be taxable by the unassisted authority of the states; hence the introduction of this enabling clause. Something was said on the argument, though the point was not much pressed, in denial of the right of congress to take away from property an immunity from state taxation that it derived from the constitution. The argument was, that congress could not relinquish to the states a privilege conferred upon it to enable it to discharge its national responsibilities. The position seems untenable. It is, beyond question, of great importance that the faculty to borrow money should exist, in an untrammeled form, in the general government, but no reason is perceived why this function cannot be exercised on such terms, to be observed by those

who lend the money, as congress may prescribe. The constitution makes the loan to the nation free from state taxation, but why may not the money be taken on condition that the lender pay such state taxes as may be assessed upon it? Whether the loan is to be free or subject to taxation, is, like the rate of interest and the mode of repayment, a part of the agreement on which the money is put out, and is to be regulated, like all other matters of contract, by the parties to it. It seems to me that the government would have the clear right to stipulate, that the money borrowed should remain in the class of taxable property. But it is to be noticed that the provision in question does not attempt to impose a liability to taxation on the loans to the government. Its effect is this : it withholds from the corporation which itself creates, a privilege which other persons possess. In the hands of individuals, the national securities are not liable to state taxation ; in the hands of the national banks it is imposed as a condition to their existence, that such securities shall become taxable through their shareholders. Such regulation must be lawful, unless it can be shown that congress does not possess the power to establish the laws which are to regulate the being, which it has the admitted right to create. The payment of state taxes is a part of the price paid for the privileges conferred upon these banking associations, and I am unable to see any constitutional objection to the exaction of such price.

But it will be observed that the proviso just quoted does not confer upon the state the right to tax these shares in an unqualified form, but annexes to it the restriction that such shares are to be assessed " at the place where said bank is located, and not elsewhere." The proper meaning of the word " place," as here used, was the subject of much comment on the argument, and the question, certainly, is not without its difficulties. The word, in the connection in which it here stands, has an import which, obviously, is ill-defined. The place where the bank is located may signify the site of the banking-house, or the street, or ward, or city

in which it is situated. On the part of the plaintiffs it was insisted that the phrase denoted the smallest district in which the banking-house stood that was possessed of a taxing power, as, for example, a township or city. But it is clear, and such was the line of adverse argument, that in this sense the place of location, with regard to county taxes, would be the county; and with regard to state taxes, would be the state. Annexing to the word "place" the idea of municipal locality, this would be the logical result, and although at first view it seemed to be too artificial, upon reflection I have concluded to adopt it. The purpose of the clause appears to be to provide for a perfectly uniform rate of taxation on all the shareholders wherever they may reside, and the construction just mentioned will tend to effect that purpose. Non-resident shareholders can be assessed only at the banking-house itself by virtue of a law adapted to that end, and it will be the taxes of the state, and of the county, and township or city in which the bank is actually situated, which will fall upon that description of persons; and in like manner by force of the construction now approved, these same taxes and none other, will be imposed upon the other class of shareholders. For persons resident in this state, who are the owners of shares of the stock of a national bank located in the state, will be liable to the state tax on such shares; if resident in the same county with such bank, to the taxes of such county; and if resident in the same township or city, to the taxes of such township or city, as the case may be. They will not be subject to the taxation of any district having power to tax, whether county, township, or city, in which they may reside, unless the bank be situated in such district. Thus, a rate of taxation perfectly uniform, both as to residents and non-residents, is established. It is true that by force of the laws of this state as they now exist, shareholders residing in other states, or in counties, townships, or cities in which the banks whose shares are held by them are not located, will, either in whole or in part, escape taxation; but this evil is the result of an imperfection in the

law which is beyond the correction of judicial power. The remedy is in the hands of the legislative department. The emergency seems to require a law so framed as to provide for the assessment of all the shares of those banking associations situated in the state, at the respective banking-houses for all state, county, and township or city taxes, without reference to the residence of the owners of such shares. By this method only will the complete intent of the clause in question be accomplished, but the construction above given to it will effectuate such intent, as far as it is practicable to do so, by force of the present laws of this state. I conclude, therefore, that the term "place," as used in the proviso just cited, bears a relation to the species of tax which is to be levied; thus, with regard to a state tax, the word means state; and with regard to a county and township or city tax, it is to be contracted in signification to such localities.

To apply these conclusions to the cases now before the court.

*First.* It appears that George W. Edge resides in the second ward of Jersey City, and is the owner of five shares in the First National Bank of Jersey City, which has its whole capital and $123,000 of its surplus funds invested in the bonds of the United States, and that this bank is located in such second ward.

These shares have been properly assessed. Their immunity derived from their being founded in part on United States securities, is taken away by the provision of the act of congress above commented on; and, so far as they have a value from other property of the corporation, they are amenable to state laws, without the aid of any power conferred by the general government. And as this assessment has been regularly made at the place of the residence of the owner of the shares, which is also the place in which the bank is located, the mode of proceeding authorized by the act of congress and that prescribed by the laws of this state, are in harmony. This portion of the tax, therefore, should be enforced.

*Second.* John S. Fox resides in the first ward of Jersey City, and owns certain shares of stock in the above named National Bank of Jersey City, which is situated in the second ward of said city, and is possessed of the bonds and other securities of the United States to an amount exceeding its original capital.

This property has also been properly assessed on the grounds just assigned, the owner of the shares being a resident of the same state, county, and city in which the bank is located. The taxation is warranted by the conjoint effect of the state law and the act of congress.

*Third.* The said John S. Fox is likewise the owner of shares of the capital stock of the First National Bank of Hoboken, the whole capital of which is invested in national securities.

Upon the principles above explained, these shares are taxable by the laws of the state, solely from the fact that such taxation has been authorized by congress, and the consequence is that the property must be assessed at the place of the location of the bank, which is the city of Hoboken. With regard, therefore, to that part of this assessment which is for the purposes of the municipal government of Jersey City, the proceeding is irregular and void, for that tax has not been and could not be assessed, according to the act of congress, at the place of the location of the bank. But with reference to the state and county tax, the place of the residence of Mr. Fox was coincident with the place of the location of the bank in the sense in which the word "place" is to be received. That portion, then, of this assessment which was raised by municipal authority should be vacated and the residue retained.

*Fourth.* The said John S. Fox is also the owner of sundry shares of the capital stock in the National Bank of Newark, which is located at Newark, and has one-half of its capital invested in bonds of the United States.

One-half of the value of these shares is derived from property owned by the bank, which, from reasons already given,

is not protected against state taxation. There is, therefore, no impediment to the taxation, in the mode directed by the laws of the state, of this property to this extent. The shares, to one-half of their value, can regularly be assessed at the place of the residence of their owner, in common with his personal estate. With regard to the other half of the shares of the stock in question, as it derives its value from privileged securities held by the bank, it is taxable only by force of and in accordance with the act of congress, and, consequently, it can be assessed only in the form prescribed in such act. The assessment, therefore, must be made at the place of the location of the bank, but as the owner of the shares in question does not, so far as concerns county and city taxes, reside at the place of such location, there is no legal procedure adapted to the exigency. The national law requires the assessment of these local taxes to be made at Newark; the law of the state requires it to be made in Jersey City; it is obvious, then, that under such circumstances this portion of these taxes cannot be legally levied. But this incompatibility between the state and federal legislation does not exist in relation to the levying of the state tax. As to it, the residence of Mr. Fox is at the place of the location of the bank, and on that account, to this extent, no objection is perceived to the assessment. The result therefore is, that the state tax should be assessed on the whole of the value of these shares of stock, and the county and city taxes on one-half of such value.

*Fifth.* The said John S. Fox was indebted to the said First National Bank of Jersey City in a certain large amount, and that the assessor refused to deduct such debt from the valuation of such taxable property.

This was clearly erroneous. The corporation to which the debt is due is not a non-resident, and by the plain language of the tax law of this state, this credit should have been given to the party taxed.

ELMER and VREDENBURGH, Justices, concurred.

The following order was thereupon made, *viz.*:

"The court having heard the arguments of counsel and duly considered the same, and being of opinion that the shares of stock in national banks, established under the act of congress, are by law taxable in this state, notwithstanding a part or the whole of their capital may be invested in bonds or other securities of the United States; and that where the shareholder resides in any ward in the same city in which the bank is located, he is liable to be assessed for state, county, and city taxes on the full amount of his stock; and where he resides in the same county, he is liable to be assessed for state and county taxes, but not for city taxes on the same; and where he resides in a different county from that in which the bank is located, he is liable to be assessed on such shares for state taxes only; and being of opinion that national banks located in this state, organized under the act of congress, are residents of this state, and that debts due to them ought to be deducted from the taxable property of the inhabitants of this state—

"It is thereupon adjudged and considered, that the assessment of taxes upon the shares of the plaintiff, George W. Edge, be affirmed; and that the assessment of taxes upon the amount of shares of the capital stock of the plaintiff, John S. Fox, in the First National Bank of Jersey City, be affirmed, except as to the taxes assessed upon six thousand dollars thereof, the amount of the debt due by the said John S. Fox to said bank, and as to said amount, the assessment of taxes thereon be set aside and reversed; and that the assessment of state and county taxes on the shares held by said John S. Fox in the First National Bank of Hoboken, be affirmed, and that the assessment of city taxes thereon be set aside and reversed; and that the assessment of state taxes upon the shares of the said John S. Fox in the National City Bank of Newark, be affirmed, and that the assessment of county and city taxes thereon be reversed."

On motion of A. O. Zabriskie & Son, for plaintiffs.

CITED in *State v. Haight, Collector*, 5 *Vroom* 130.