Mr Chief Justice Marshall
delivered the opinion of the Court.
This case was argued on its merits at a preceding term; but a doubt having arisen with the Court respecting its jurisdiction in cases of prohibition,, that doubt was suggested to the bar, and a re-argument was requested. It has been re-argued at this term.
The. power of this Court to revise the judgments of a state tribunal, depends on the 25th section of the-judicial act. That section enacts “ that a final judgment or decree in any suit in the highest court of law or 'equity of a state in which a decision in the suit could be had,” “ where, is drawn in question the validity of a statute or of an authority exercised under any state, on the ground of their being repugnant to the constitution, treaties, or laws of the United States, and the decision is in favour of- such their validity,” “ may be re-examined and reversed or affirmed in the Súpreme Court of the United States.*’ »
'In this case the city ordinance of Charleston is the exercise» of an “ authority under the state of South.Carolina,” *464 the validity of which has been drawn in question on the ground of its being repugnant to the constitution,” and “ the decision is in favour of its validity.” The question therefore ■which was decided by the constitutional court, is the very question on which the revising power of this tribunal is. to be exercised, and the only inquiry is, whether it has been decided, in a case described in the section which authorises the writ of error that has been awarded. Is a writ of prohibition a suit?
The term is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice, by which an individual pursues that remedy in a court of justice, which the law affords him. The modes of proceeding may be various, but if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought, is a suit. The question between the parties, is precisely the same as it would have been in a writ of replevin, or in an action of trespass. The constitutionality of the ordinance is contested; the party aggrieved by it applies to a court; and at his suggestion, a writ of prphibition, the appropriate remedy, is issued. The opposite party appeals; and, in the highest court, the judgment is reversed and judgment given for the defendant. This judgment was; we think, rendered in a suit.
We think also that it was a final judgment in the sense in which that term isMised in the ,26th section of the judicial act. If it. were applicable to those judgments and decrees only in which thé right was finally decided, and could never again be litigated between the parties, the provisions of the section would 'be confined within much narrower limits than the wor,ds import, or than congress eould have intended. Judgments in actions of ejectment, and decrees in chancery dismissing a bill withoüt prejudice, however deeply they might affect rights protected by the constitution, laws, or treaties of the United States, would not be subject to the revision of this Court. A prohibition might issue, restraining a collector from collecting duties, and this Court would not revise and correct the judgment. The word “ final” must. be understood in the section under consideration, as apply *465 ing to all judgments and decrees which determine the particular cause.
. We think .then that the writ of error has brought the cause properly before this Court.
This brings us to the main question. Is the stock issued for loans made to the government of the United'States liable to be taxed by states and corporations ?
Congress has power to borrow money on the credit of the United States.” The stock it issues is the evidence of a debt created by the exercise of this power. The tax in question is a tax upon, the contract subsisting between the government and the individual.. It bears directly upon that contract, while subsisting and in full force.. - The power operates upon the contract the instant it is framed, and must imply, a right to. affect that contract.
If the states and corporations throughout the union, possess the power to tax a contract for the loan of money, what shall arrest this principle in its application to every other contract? What measure can government adopt which will not be exposed to its influence ?
But it is unnecessary to pursue this principle through its diversified application to all the contracts, and to the various, operations of government.. No.one can be selected which is of more vital intérest to the cpmmunity than this of borrowing money on the credit of the' United States. No power has been conferred by the American people on their government, the free and unburthened exercise of which more deeply affects every member of our republic. In war, when the honour, the safety, the independence of the nation are to be defended, when all its resources are to bp strained to the utmost, credit must be brought'in aid of taxation, and the abundant revenue of peace and prosperity must be anticipated to supply the exigences, the urgent demands of the moment. The. people, for objects the^-most important which, can occur in the progress of nations, have empowered their government to make., these anticipations, “ to borrow money on the credit .of. the United States.” Can any thing be more dangerous, or more injurious, than the admission of a principle which authorizes every state and every corporation in *466 the union.which possesses the right of taxation, to burthen the exercise of this power at théir discretion1?
If the right to impose the tax exists, it is a right which in its nature acknowledges no limits. It may be carried to any extent within, the- jurisdiction of the state or corporation which imposes it, whjch .the will of each .state and corporation may prescribe. A. power which is given by the whole American people for their common good, which is to be exercised at the most critical periods for the most important purposes, on. the free exercise of which the interests certainly, perhaps the liberty of the whole may depend; may be burthened, impeded, if not arrested, by any of the organized parts of the confederacy.
In a society formed like ours, with one supreme government for national purposes, and numerous state governments for other purposes; in many respects independent, .and in the uncontrolled exercise of many important powers,- occasional interference's ought not to surprise us. The power of taxation is one of the most essential to a state, and one of the most extensive in its operation. The attempt to maintain a rule which shall limit its exercise, is Undoubtedly among the most delicate and difficult-duties which can devolve on those whosé province it is to expound the supreme law of the land in its application to the cases of individuals. This duty has more than once devolved on this Court. In . the performance of it we have, considered it as a necessary consequence-from the supremacy of the government-of the whole, that its action in the exercise of its legitimate powers, should be free and unembarrassed by any conflicting powers •in the possession of its parts; that the powers of a state cannot rightfully be.so exercised as to impede and obstruct the free course of those measures which the government of the states united may rightfully adopt.
This subject’was brought before the Court in the case of M’Culíough vs. The state of Maryland(a), when' it was thoroughly argued and deliberately considered. The question decided in that case bears a near resemblance to that *467 which is involved in this. It was discussed at the bar in all its relations, and examined by the Court with its utmost attention. We will hot repeat the reasoning which conducted us to the conclusion thus formed ; but that conclusion , was that “all subjects over which the sovereign power of a state extends, are. objects of taxation 3 but those over which it does not extend, are upon the soundest principles exempt from taxation.” “The sovereignty of a state, extends to every thing which exists by its own authority, or is introduced by its permission;” but not “to those means which are employed by congress'to carry into execution powers conferred on that body.b} the people of the United States.”. “The attempt to use” the power of taxation “ on the means employed by the government of the union in pursuance of the constitution, is itself an.abuse, because it is the usurpation of a power which the people of a single state cannot give.”
The Court said in that case, that “ the states have no power by taxation, or otherwise, to retard, impede, burthen, or in any manner control the operation of the constitutional laws enacted by congress, to carry into execution the powers ■vested in the general government.”
We retain the opinions which were then .expressed. A contract made by the government in the exercise of its power, to borrow money on the credit of the United States, is undoubtedly independent of the will of any state in which the individual who lends may reside, and is undoubtedly an operation essential to the important objects for which the government was created. It ought, therefore, on the principles settled in the case of M’Cullough vs. The State of Maryland, to be exempt from state taxation, and consequently from being taxed by corporations deriving their power from states.
It is admitted that the power of the government to borrow money can not be. directly opposed, and that any law directly obstructing its operation would be void; but, a distinction' is taken between direct opposition and those measures which may. consequentially affect it; that is, that a law prohibiting loans to the United States woulcl be void, but a tax on them to any amount is, allowable.
It is, we think, impossible not to perceive the intimate *468 connexion which exists between these two mbdes of acting on the subject.
It is not the want of original power in an independent sovereign state, to prohibit loans to a foreign government, which restrains the legislature from direct opposition to those made by the United States. The restraint is imposed by our-constitution. The American people have conferred the power of borrowing money on their government, and by making that government supreme, have shielded its action, in the exercise of this power, from the action of the1 local governments. The grant of the power is incompatible with a restraining or controlling power, and the declaration of supremacy is a declaration that no such restraining or controlling, power shall be exerciser,.
The right to, tax the contract to any extent, when made, must operate upon the power to borrow before it. is exercised, and have a sensible influence on the contract. The extent of this influence depends on the will óf a distinct government. To any extant, however inconsiderable, it is a bur-then on the operations of government. It may be carried to. an extent which shall arrest them entirely.
It is admitted by the counsel for the defendants, that the powpr to tax stock must affect the terms on which, loans will be made; but this objection, it is said, has no more weight when urged against the application Of an acknowledged power to government stock, than if urged against its application to lands sold by the United States.
The distinction is, we think, apparent. When lands are sold, no connexion remains between the purchaser and the government. The lands purchased become a part of the mass of property in. the country with no implied exemption from common bvrthens. All lands are derived from the general or particular government, and all lands are subject to taxation. Lands sold ar,e in the condition of money bor-1 rowed and re-paid. Its liability to taxation in any form, it may then assume is not questioned. The connexion between the borrower and the lender is dissolved. It is no .burthen on loans, it is no impediment to the power of borrowing, that the money, when re-paid, loses its exemption from taxation. *469 But a tax upon debts due from the government, stands, we think, on very different principles from a tax on lands which' the government has sold.
“The Federalist” has been qúoted in the argument, and an. eloquent" and well merited eulogy has been bestowed'on the great statesman who is supposed to be the author of the number from which the quotation was made. This high authority 'was also relied Upon in the casé of M’Cullough vs. The state , of Maryland, and was. considered by the Court. Without repeating what was .then said, we refer to it as exhibiting our view of the sentiments expressed on this subject by the authors of that work.
It has been supposed that a tax on stock comes within the' exceptions stated in the case of M’Cullough vs. The state of Maryland. We .do not think so. The bank of the United States is an instrument essential to the fiscal operations of the government, and the power which might be exercised to its destruction was denied. But property acquired by that-corporation in a state .wás supposed to be placed in the same condition with property acquired by an individual.
The tax on government stock is thought by this Court to be a tax on the contfaét, a tax on the power to borrow money oh the credit of the United States, and consequently to be repugnant to the constitution.
We are, therefore, of opinion that the judgmént of the constitutional court of the state of South Carolina, reversing the order made by the. court of common pleas, awarding a prohibition to the city council of Charleston, to restrain them from levying a' tax imposed on six and seven per cent, stock of the United States, under an ordinance to raise supplies to the usé of the city of Charleston for the year 1823,. is erro- . neous in this; that the said constitutional court adjudged that the said Ordinance was not repugnant to" the constitution of the United States; whereas, this Court is of opinion that suc.h repugnancy does exist. We are, therefore, of opinion that the said judgment ought to be reversed and annulled, and the causé remanded to the constitutional court forthe state of South Carolina, that farther proceedings may be had therein according to law.

 4 Wheaton, 316.