THE PEOPLE, *ex rel.* The Phenix Fire Insurance Company, *vs.* THOMAS A. GARDINER, county treasurer, &c.

Certificates of indebtedness of the United States, issued pursuant to the acts of congress passed in 1862, are not "*securities*" within the act of congress of February 26, 1862, exempting from taxation all "stocks, bonds and *securities* of the United States."

They are merely certificates or acknowledgments of a pre-existing indebtedness, incurred in the ordinary way, without any security or any specific pledge of the public faith,

Congress, in exempting "securities" from taxation, has not excluded the states from the power to tax these certificates.

The act of the legislature of April 6, 1866, (*Laws of* 1866, *ch.* 418,) does not limit the authority of the county treasurer of Kings county, in issuing the certificates of indebtedness specified in section 3, to cases of taxes on investments which have been judicially decided to be exempt.

A MANDAMUS was issued to the county treasurer of Kings county, to compel him to give a certificate under the law of 1866, (*Laws of* 1866, *ch.* 418, *vol.* 1, *p.* 919,) for taxes paid in 1863 and 1864, on U. S. "certificates of indebtedness." There was a return of the county treasurer, alleging that the taxes on "*Certificates of Indebtedness*" mentioned in said writ of alternative mandamus, are not decided, and have not been judicially decided to have been illegally imposed or collected, nor has it been judicially decided that "*Certificates of Indebtedness*" of the United States of America are exempt from taxation, and that taxes thereon have been illegally imposed and collected. And therefore that the investments of the relator in "*Certificates of Indebtedness*" stated in said mandamus, are not within the purview of the act, (*ch.* 418, *of the Laws of* 1866;) and consequently he, the said county treasurer, had no authority in law to issue the certificates so, as aforesaid, refused to the relator.

To this return the relator demurred. Joinder in demurrer; and judgment for the respondent on demurrer, at special term. The relator appealed to the general term.

The People *v.* Gardiner.

*A. C. Bradley,* for the appellant.

*P. S. Crooke,* for the respondent. I. The act of congress, February 25, 1862, exempted from taxation " all stocks, bonds and other securities of the United States." (12 *Stat. at Large,* 346, § 2.)

The act of March 1, 1862, authorized the issue of " certificates of indebtedness" " in satisfaction of audited and settled demands." (12 *Stat. at Large* 352.)

III. The act of June 30, 1864, provided that " all bonds, treasury notes and other obligations of the United States shall be exempt from taxation by or under state or municipal authority." (*Laws of U. S.* 1864, *p.* 218.)

IV. " The certificates of indebtedness" are not included in the act of 1862, (passed previously.) They are not comprised under the description of " stocks, bonds, securities."

V. They are not decided judicially to be exempt from taxation. (2 *Wallace U. S. Rep.* 200.)

GILBERT, J. The relator is a corporation, doing business in the city of Brooklyn, and was assessed for the taxes of 1863 and 1864, upon its investments in the certificates of indebtedness, issued pursuant to the acts of congress, passed in 1862. (12 *Stat. at Large,* 352–370.) These taxes were paid into the county treasurer's office of Kings county. On the 6th of April, 1866, the legislature of this state passed an act entitled " An act to authorize the board of supervisors of the county ot Kings to correct illegal assessments for town, county and state taxes," and thereby authorized and directed the supervisors of said county " to levy and collect by tax the several sums paid the county of Kings by the several incorporated companies in said county in 1863 and 1864, for taxes assessed on their investments in the public indebtedness of the United States, with interest thereon, and which taxes have been judicially decided to have been illegally imposed and collected." It then directed the county

treasurer " to pay over and refund to the said corporations, the several amounts of taxes thus illegally imposed and collected as aforesaid," out of the moneys so to be raised, and in the meantime to issue certificates of indebtedness, payable on or before January the 1st, 1867. (*Laws of 1866, vol.* 1, *p.* 919.) The respondent having refused, after due demand, to issue to the relator the certificates for the sums paid by it as aforesaid, an alternative writ of mandamus was issued, commanding him so to do, or show cause, &c. The return to this writ sets forth that the taxes against the relator aforesaid are not, and have not been decided to have been illegally imposed or collected, nor has it been judicially decided that certificates of indebtedness of the United States are exempt from taxation ; that taxes thereon have been illegally imposed and collected ; and that the investments of the relator are not within the provisions of the act of April 6, 1866, and therefore the respondent has no authority to comply with the relator's demand.

To this return the relator demurred. It was contended on the part of the respondent, that the return presented a material issue of fact, namely : whether it has been judicially decided that the taxes in question were illegally imposed, &c. and that since the demurrer admitted the truth of the facts stated in the return, the respondent was entitled to judgment. This position of the respondent can be maintained only upon the assumption that the act of April 6, 1866, limits the authority of the respondent to the issuing of certificates for taxes on investments which have been judicially decided to be exempt. I am of opinion that no such limitation is contained in the act. The statute is a remedial one. Its object is shown by its title to have been redress for illegal taxation. If the legislature meant the refunding only of such taxes as had been " judicially decided " to have been illegally imposed, to the supervisors, and not to the respondent, was committed the duty of determining what taxes came within the act.

The People v. Gardiner.

The duty imposed on the respondent was ministerial merely, not judicial. The legal intendment is, that the supervisors performed their duty under the act, and there not being any averment to the contrary, it will also be intended that their action furnishes no defense to the respondent. The demurrer, therefore, was well taken.

It does not follow, however, that a peremptory mandamus must issue. For the question now arises whether the facts stated in the writ are sufficient. (*People* v. *Ransom*, 2 *Comst.* 490.) Upon this subject, the first question is, whether these certificates of indebtedness fall within the exemption contained in the act of congress of February 26th, 1862. That exemption extends to all "stocks, bonds and securities of the United States." Manifestly they are not "stocks" or "bonds." Are they securities, within the meaning of the act of congress? Upon reflection, and contrary to my first impression, I have come to the conclusion that they are not. They are authorized to be given only for two purposes, namely, "*in satisfaction of audited and settled demands,*" "*and in discharge of checks drawn by disbursing officers.*" They are, therefore, merely certificates or acknowledgments of a pre-existing indebtedness, incurred in the ordinary way, without any security or any specific pledge of the public faith. The object of granting the authority to issue them, was to accommodate persons who had outstanding accounts against the government, by giving them tangible and certain evidence that such accounts had been audited and settled, and of the amount due. The government derived no benefit from them, except relief from demands for present payment, and an augmentation of the ability to furnish it further aid, which these facilities to the public creditors afforded; nor was the issue of them necessary to the enjoyment and exercise of the powers vested in the government. I think, therefore, they are not securities in any higher degree than the audited accounts and checks which they represent. The object of the exemption under consideration has been generally under-

stood to have been the facilitating the government in obtaining new and further credit upon loans of money and purchases of property. · If this was the object and intent of the statute, we are precluded by long and familiar rules of construction, from extending the meaning of the word beyond what is necessary to promote and secure that object.  (1 *Bl. Com.* 60. *U. S. Trust Co.* v. *Brady*, 20 *Barb.* 119.  *Strong* v. *Wheaton*, 38 *id.* 616.)

It is also a significant fact that congress had granted no authority to issue these certificates when the act containing the exemption was passed.  They could not, therefore, have been in contemplation of congress.  Perhaps the best test of the meaning of the word " securities " in this connection is in the application of the maxim, " *Noscitur a Sociis.*"  The statute exempts " stocks, bonds, and other securities of the United States."  Stocks are the registered obligations representing a portion of the permanent funded debt of the government.  Bonds are similar unregistered obligations, and upon the principle referred to, the securities must be deemed the other obligations, of a less formal character, but created for the same general purposes and having the same general uses.  (*Broom's Leg. Max.* 450, *et seq.*)

The learned counsel for the relator insisted that these certificates, being a form of government debt, were not taxable under state authority, even though they are not exempt from such taxation by act of congress.  No adjudication to this extent, however, was cited.  In the cases of *McCulloch* v. *Maryland*, (4 *Wheat.* 316,) and *Osborn* v. *The Bank of the United States*, (9 *id.* 738,) the court decided no more than that the states could not tax the operations of the Bank of the United States, because that corporation was one of the means employed for carrying into execution powers vested in the general government.  They ruled distinctly, in the first case, that property acquired by the bank in a state was liable to taxation.  In *Weston* v. *Charleston*, (2 *Peters*, 449,) the court decided that state taxation on government stock was

The People v. Gardiner.

illegal because it was a tax on the contract, a tax on the power to borrow money on the credit of the United States. (*See* 2 *Black*, 631, *et seq.*) These cases ought, on grounds of public policy, to be restricted to the point decided.

The exemption of the stocks and bonds of the United States is already severely felt by the people in the unequal burdens which those who are not owners of such property sustain. A construction of the constitution which establishes a privileged class of public creditors, who, though living under the protection of the government are exempted from bearing their share of its burdens, ought to be very palpable before it is adopted.

The power of taxation under our government as a general rule is a concurrent one. The qualification of the rule as held by the Supreme Court of the United States in *Van Allen* v. *The Assessors*, (3 *Wallace*, 585,) are the exclusion of the states from the taxation of the means and instruments employed in the exercise of the functions of the federal government.

It was also held in this case, that when the concurrent power exists, although congress may, by reason of its paramount authority, exclude the states, yet there is no doubt congress may withhold the exercise of the authority, and leave the states free to act. If I am right in my construction of the act of congress exempting "securities" from taxation, they have not excluded the states from the power to tax these certificates.

Consequently the mandamus was properly denied, and the judgment should be affirmed.

J. F. BARNARD, J. was for affirmance, on the ground that the return presented a question of fact, and the demurrer admitted the truth of it.

LOTT, J. expressed no opinion.

Judgment affirmed.

[KINGS GENERAL TERM, February 11, 1867. *Lott, J. F. Barnard* and *Gilbert*, Justices.]