DOUGHERTY, J.T.C.
N.J.S.A. 54A:6-14.1 is interpreted by the Division of Taxation to require shareholders of “non-qualified” investment funds to characterize the annual cash distributions they receive from their funds as “dividend” distributions. N.J.S.A. 54A:5-1f provides that dividend distributions are included in a taxpayer’s gross income if they are paid out of current or accumulated earnings and profits of the payor corporation. In this declaratory judgment action, Plaintiffs contend that the Gross Income Tax Act, N.J.S.A. 54A:1-1 to :10-12 (GIT), does not provide immunity for that portion of a “non-qualified” investment fund’s distribution to its shareholders which consists of interest earned on Federal debt obligations, and thereby violates the immunity of that interest mandated by 31 U.S.C.A. § 3124(a) (West Supp. 1997), as well as the Supremacy and Borrowing Clauses of the United States Constitution. The matter has been presented on stipulated facts.

The Facts

Plaintiff Investment Company Institute is a national association of investment companies. Plaintiff Colonial Trust III is a member of the Institute.
Colonial Trust III (Colonial) is an open-end investment company established as a Massachusetts business trust in 1986. A Massachusetts business trust (an MBT) is formed as a trust under state law but classified for Federal income tax purposes as an unincorporated association. That classification results in an MBT being taxed not as a trust, but as a corporation. Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935); Treas.Reg. § 301.7701-4(b); Mertens, Law of Federal Income Taxation § 38A.30 (1995). An MBT is also taxed as a corporation under the Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -40 (CBT), rather than as a trust under the GIT. N.J.S.A. 54A:2-1.
Colonial maintains its trust funds in several separate investment portfolios. Each portfolio is represented by a series of shares. Each series of shares represents beneficial ownership interests in the segregated assets of the particular portfolio. One of Colonial’s *388 investment portfolios is the Colonial Federal Securities Fund (Fund). This matter requires analysis of New Jersey’s taxation of the holders of beneficial interests in the Fund (the Shareholders).
The Fund is an entity commonly known as a “mutual fund” in the investment and tax communities. The Fund sells participation shares to the general public and invests the proceeds of those sales primarily in (i) United States obligations and securities (Federal Obligations) and (ii) other securities. The Fund’s Shareholders enjoy diversification in investment because they effectively own a pro rata (proportionate) share of all assets owned by the Fund. Shareholders buy into the Fund at a relatively modest cost. They could not reproduce the array of securities owned by the Fund in individual portfolios at that cost. The Fund’s Shareholders bear the risk of profit or loss on the Fund’s investments because the market value of their shares is directly related to the market value of the Fund’s portfolio of investments.
The Federal Obligations owned by the Fund are among “those obligations which are statutorily free from State or local taxation under any other act of [New Jersey] or under the laws of the United States.” N.J.S.A. 54A:6-14. The Federal Obligations pay interest to the Fund. If that interest were paid directly to the Shareholders it would be exempt from taxation under the GIT. N.J.S.A. 54A:6-14.
Historically, the Fund has made annual cash distributions in amounts equal to substantially all of its gross income from all of its investments reduced by the total of its expenses, including portfolio management fees.
The Fund has at all times invested less than eighty percent (80%) of its assets in government obligations and has failed to constitute a “qualified investment fund.” N.J.S.A. 54A:6-14.1. New Jersey taxpayers owning shares in the Fund have been required to report distributions to them as taxable income. N.J.S.A. 54A:5-l.f.
During the Fund’s fiscal year ending October 31, 1993 (Fiscal 1993), approximately two-thirds of its assets consisted of Federal *389 Obligations. Accordingly, a portion of the Fund’s income for Fiscal 1993 was attributable to interest paid by the United States Government. The amount of cash distributed by the Fund in Fiscal 1993 exceeded the net income derived from the Fund’s “other securities,” so that a portion of the Fund’s Fiscal 1993 distributions necessarily consisted of interest paid by the United States Government on the Federal Obligations.
The Fund is qualified as a Regulated Investment Company (RIC) under Subchapter M of the Internal Revenue Code of 1986, as amended (I.R.C. §§ 851-855) and is established under the Investment Company Act of 1940, as amended (15 U.S.C.A. §§ 80a-1 to 80b-2).

The Issue

Plaintiffs seek a declaratory judgment that taxation, under N.J.S.A. 54A:6-14.1 and N.J.S.A. 54A:5-1, of income received by shareholders of mutual funds attributable to interest paid to the fund on Federal Obligations is barred by: (i) the plain language of 31 U.S.C.A. § 3124(a); (ii) the Doctrine of Intergovernmental Tax Immunity; and (iii) the Supremacy and Borrowing Clauses of the United States Constitution.
The statutes, as pertinent, are:
N.J.S.A. 54A:6-14.1:
Gross income shall not include distributions paid by a qualified, investment fund, to the extent that the distributions are attributable to interest or gain from obligations described in N.J.S. 54A:6-14 (emphasis added).
N.J.S.A. 54A:6-14:
Gross income shall not include interest on obligations (1) issued by or on behalf of this State or any county, municipality, school or other district, agency ... body corporate and politic or political subdivision of this State, or (2) those obligations which are statutorily free from State ... taxation ... under the laws of the United States.
31 U.S.C.A. § 3124(a):
(a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—
*390 (1) a nondiscriminatoiy franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and
(2) an estate or inheritance tax.
(b) The tax status of interest on obligations and dividends, earnings, or other income from evidences of ownership issued by the [United States] Government or an agency and the tax treatment of gain and loss from disposition of those obligations and evidences of ownership is decided under the Internal Revenue Code of 1954 (26 U.S.C. 1 et seq.) (emphasis added).
The Supremacy Clause, U.S. Const, art. VI, cl. 2, provides “[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; ..., shall be the supreme Law of the Land; . . . .” The Borrowing Clause, U.S. Const, art. I, § 8, cl. 2, establishes that Congress has the power “to borrow Money on the credit of the United States.”
Plaintiffs contend the GIT’s taxation of Fund Shareholders requires interest on Federal Obligations to “be taken into account, [and] ... included in computing the tax ...” on “dividend” income, contrary to the plain language of the statute.
As to the Borrowing Clause, Plaintiffs argue that interest on Federal Obligations is generally exempt from State (and local) income tax so that the Obligations are issued at a lower interest rate than private, corporate obligations with which they compete in the markets. Because of the anticipated exemption, the Federal government (like the state and municipal governments) pays less than “market” interest to borrow money. Similarly, in anticipation of the exemption, purchasers of Federal Obligations accept a lower interest rate than might otherwise be available. N.J.S.A. 54A:6-14.1 and N.J.S.A. 54A:5-1, together imposing a tax upon non-qualified investment fund shareholders, it is asserted, tarnish the attractiveness of investing in Federal Obligations through mutual funds, disturbing investors’ net returns, and thereby negatively affecting the exercise of the Federal Borrowing Power.
Defendant, Director, Division of Taxation (Director), contends that New Jersey may limit the immunity of Federal Obligation interest paid to the Fund’s Shareholders just as the Federal government has limited the exemption of State and local obligation interest under I.R.C. § 852(b)(5) to entities meeting prescribed *391 criteria. He contends that the “non-qualified” fund classification under N.J.S.A. 54A:6-14.1 applies equally to the interest from Municipal, State and Federal Obligations — that the tax is nondiseriminatory.
Relying on South Carolina v. Baker, 485 U.S. 505, 524, 108 S.Ct. 1355, 1367, 99 L.Ed.2d 592, 611 (1988), Plaintiffs assert that New Jersey has no power to limit the immunity of Federal Obligations as it does in N.J.S.A. 54A:6-14.1. They assert that Federal tax provisions for Exempt-Interest Dividends (I.R.C. § 852(b)(5)) are not constitutionally mandated, but exist purely as a matter of legislative grace. It is clear, they conclude, that while Congress may limit and define the exemption from Federal income tax for State and local obligations, the States may not define limits of Federal Obligation immunity because that immunity is constitutionally grounded.
Director contends that 31 U.S.C.A. § 3124 requires immunity of interest paid to the Fund — the owner of record of the Obligations; and that the statute does not require immunity at the Shareholder level. Director contends that the Fund is a separate taxpayer from its Shareholders; that as a corporation the Fund is a “nonconductor,” cutting off the pass through of immune interest character; relying solely on Miller v. Milwaukee, 272 U.S. 713, 714, 47 S.Ct. 280, 280, 71 L.Ed. 487, 489 (1927). What is received by the Shareholders, Director contends, is no longer “interest” but merely fungible earnings and profits of the corporate entity.
Director concludes that the tax imposed on “dividend” distributions to Fund Shareholders is not measured in any manner by the amount of the Federal Obligation interest received by the Fund. It is, he argues, a tax on the income of the individual Shareholder, that is, upon the amount of dividends a Shareholder receives, and is neither computed by “considering” the Federal Obligation interest received by the Fund, nor otherwise “measured” by such Federal Obligation interest.
Director is aware that States other than New Jersey have already interpreted 31 U.S.C.A. § 3124 to require the pass-through of the Federal Obligation interest exemption to mutual *392 fund shareholders. Brown v. Franchise Tax Bd., 197 Cal.App.Bd 300, 242 Cal.Rptr. 810 (1987); Andros v. Illinois Dep’t of Revenue, 154 Ill.App.Bd 37, 106 Ill.Dec. 732, 506 N.E.2d 439 (1987), cert. denied, 485 U.S. 960, 108 S.Ct. 1223, 99 L.Ed.2d 424 (1988); Comptroller of the Treasury v. First United Bank & Trust, 320 Md. 352, 578 A.2d 192 (1990); Commissioner of Revenue v. Plymouth Home Nat'l Bank, 394 Mass. 66, 473 N.E.2d 1139 (1985); Matz v. Department of Treasury, 155 Mich.App. 778, 401 N.W.2d 62 (1986); Borg v. Department of Revenue, 308 Or. 34, 774 P.2d 1099 (1989); In re Thomas C. Sawyer Estate, 149 Vt. 541, 546 A.2d 784 (1987); Capital Preservation Fund, Inc. v. Wisconsin Dep’t of Revenue, 145 Wis. 2d 841, 429 N.W.2d 551 (App.1988). In each case he argues that the court relied unjustifiably upon the definition of a mutual fund utilized by the United States Supreme Court in Burks v. Lasker, 441 U.S. 471, 480, 99 S.Ct. 1831, 1838, 60 L.Ed.2d 404, 414 (1979). In Burks, Justice Brennan describes a mutual fund as a “pool of assets, consisting primarily of portfolio securities, and belonging to the individual investors holding shares in the fund.” Id. Because Burks is not a tax case, but a shareholders’ derivative action, Director argues that its analysis and the conclusion of “conduit” character which other courts have drawn from that analysis, have no relevance here.
Director asserts that adopting Plaintiffs’ position would have broad ramifications — it would necessarily exempt any dividends paid by “regular” corporations that were attributable to interest on Federal Obligations owned by those corporations. This result, Director contends, was never contemplated by Congress.
As to the Borrowing Clause, Director concludes that the Clause’s scope is no wider than that of 31 U.S.C.A. § 3124; and that there is simply no evidence in the record for the court to conclude that the market for Federal Obligations would suffer from the failure of the GIT to exempt any portion of the Fund’s distributions to its Shareholders as a result of the Fund’s ownership of Federal Obligations.

*393
Analysis of the Law

It is undisputed that the Fund, like mutual funds in general, was designed to function as a Regulated Investment Company for Federal income tax purposes. It is appropriate then to begin with a brief summary of the Federal income taxation of the Fund and its Shareholders.

I. Federal Income Taxation of the Fund

Regulated Investment Companies (RICs), commonly known as mutual funds,[1] are classified as corporations for Federal income tax purposes. Corporations are taxed under two models, which are generally referred to by the Internal Revenue Code Subchapter which sets out the provisions for calculation of their income and deductions. Subchapter C (I.R.C. §§ 301-385) provides for the taxation of “regular” corporations. These corporations are taxed as entities separate and distinct from their shareholders. Subehapter S (I.R.C. §§ 1361-1379) provides for conduit taxation — that is for taxation of the corporation under a partnership model. RICs, like S corporations, are taxed under a conduit model. To understand the nature of a RIC, it is helpful to compare the two models, entity and conduit (or aggregate), in the context of Subchapters C and S.
Under the S corporation model, the entity, while recognized as enjoying an existence separate and distinct from its shareholders, is taxed as an aggregate of individuals. The corporation’s items of income and deduction flow through it and are reported by the shareholders in proportion to their ownership interests in the corporation. In keeping with the conduit analysis, Subchapter S corporations pass through the character of those items of income or deduction, the separate treatment of which on a shareholder’s return could affect the shareholder’s tax liability. Items whose *394 character passes through include: tax-exempt interest; charitable contributions; capital gains and losses; and investment income and expenses. I.R.C. § 1366.
Subchapter C treatment is the general rule, the “default” classification. Subchapter S is the most common exception. Subchapter S treatment must be elected by a unanimous vote of the shareholders. I.R.C. § 1362(a)(2). The election requirements include a prohibition against the corporation having more than 35 shareholders.[2] This limitation makes the S corporation an inappropriate choice for a mutual fund seeking conduit taxation.
The net income or profit of a Subchapter C corporation is subject to two layers of Federal income tax. The first layer is imposed on the entity, I.R.C. § 11, and the second on the shareholder. Subchapter C shareholders include the “dividends” received by them in “gross income” under I.R.C. § 61.
RICs are treated differently from Subchapter C corporations at the entity level because RICs are permitted to deduct from what otherwise would be included in their taxable income the distributions they pay to their shareholders. I.R.C. §§ 851(b)(1), 852(b)(2)(D) and 852(b)(3). In this regard, RICs are taxed like Subchapter S conduits, although the mechanics of the “pass through” are different. Those mechanics, while interesting, are not of concern here. What is important is that under each of Subchapters S and M an entire layer of tax may be avoided simply by electing out of Subchapter C.
To make a RIC election, the entity must: (i) be registered with the Securities and Exchange Commission in compliance with the Investment Company Act of 1940 (15 U.S.C.A. §§ 80a-1 to 80b-2), I.R.C. § 851(a); and (ii) meet the “gross income” and “investment diversification” tests in I.R.C. § 851(b) and distribution test in I.R.C. § 852(a).
*395 The gross income tests require that: (i) at least 90% of the RIC’s gross income for the tax year be derived from dividends, interest and gains from sales or other dispositions of stock or securities; and (ii) less than 30% of the RIC’s gross income for the tax year be derived from the sale or disposition of stock or securities held less than three months. (I.R.C. § 851(b)(2) — (3)). The income of a RIC might be described as “passive” investment income to distinguish it from a regular corporation’s income from the active conduct of its trade or business.
The investment diversification test requires that, at the close of each quarter: (i) at least 50% of the total value of the entity’s assets be in cash and cash items, government securities, securities of other RICs and of other issuers; and (ii) except with respect to Government securities, no more than 25% of the value of the entity’s total assets be invested in the securities of any one issuer. I.R.C. § 851(b)(4). RICs maintain high levels of liquidity.
As to distributions, I.R.C. § 852 requires a RIC: (i) to make annual “dividend” distributions aggregating at least 90% of its net investment company income and 90% of its net tax-exempt interest income, I.R.C. § 852(a)(1); and (ii) to have been qualified as a RIC for all tax years ending after November 8, 1983, or, at the close of its current tax year, have had no earnings or profits accumulated from a tax year in which it did not qualify as a RIC. I.R.C. § 852(a)(2). An entity such as the Fund formed and sold to the general public as a RIC must function continuously within the Internal Revenue Code parameters, or sustain the Subchapter C second layer of tax.

II. Federal Income Taxation of the Fund’s Shareholders

RICs are investment conduits for Federal income tax purposes. Their business is to invest and manage the monies of their shareholders, for which they are paid a management fee. The income earned from the investments RICs make is regarded not as belonging to the entity, but as belonging to its shareholders. Rev. Rul. 89-81, 1989-1 C.B. 226. (“In introducing the amendment which became section 852(b)(5), [the provision permitting the *396 pass through of character of State and local Obligation interest, discussed below] its sponsor noted that it was ‘wholly consistent with the concept of a mutual fund, under which the shareholders of the fund are considered, for tax purposes, as the actual owners of the fund’s holdings, and the direct recipients of their share of the fund’s earnings.’ [quoting] 122 Cong. Rec. 26,111 (1976) (statement of Senator Percy)”).
Under Subchapter C, shareholders treat distributions of property (including cash) from their corporations as one or more of: (i) “dividends” subject to tax as ordinary income: (ii) “returns of capital” not currently taxable, but resulting in a reduction of the shareholder’s stock basis; or (iii) gain from a the sale or exchange of the underlying stock. I.R.C. §§ 301 and 316. The character of the distribution is determined by allocating the corporation’s “earnings and profits” among the distributions made in the tax year. Once character is determined, it is reported to the shareholders in proportion to the number of shares they own. A distribution is a dividend to the extent that it is made out of the corporation’s earnings and profits. I.R.C. § 316(a). Distributions in excess of earnings and profits are first applied to reduce the shareholder’s stock basis and when that basis is consumed, are treated as “gain”. I.R.C. §§ 301(c)(2)-(3).
“Earnings and Profits” (E & P) is a federal tax concept having no counterpart in the law of corporations. Boris I. Bittker & James S. Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 8.03[1], at 8-16 (6th ed. 1994). New Jersey looks to Federal law for the meaning of the term in the GIT. N.J.S.A. 54A:5-1f; Laurite v. Director, Div. of Taxation, 12 N.J.Tax 483 (Tax 1992), aff'd, 14 N.J.Tax 166 (App.Div.1993).
E & P is an economic measure of a corporation’s ability to distribute excess earnings without tapping into either the shareholder’s capital contributions or the proceeds of the corporation’s debt financings. A Subchapter C corporation’s E & P is calculated without any reduction for tax exempt income (i.e. interest on State or local debt obligations), Treas. Reg. § 1.312-6(b), because although exempt from Federal income tax, that income is nonethe *397 less economically available for distribution. Interest earned on Federal Obligations is also included.
The income and deductions of Subchapter S corporations flow out to their shareholders, and, therefore, they should never have current E & P, and will only have accumulated E & P if carried over from a year in which they had no valid Subchapter S election. I.R.C. §§ 1368(c) and 1371(c). Thus, E & P is not used to characterize distributions under Subchapter S so long as the election continues. An S corporation’s shareholder distributions will be: (i) a tax free return of basis; or (ii) to the extent the distribution exceeds basis, gain. I.R.C. § 1368. In keeping with the conduit “one layer of tax” model, S shareholders characterize the distributions they receive by reference to their basis in the corporation’s stock. Special rules provide for adjustments to shareholders’ basis. These rules are designed to ensure that shareholders receive tax free corporate distributions at least equal to the amount of the corporation’s income already included by them on their annual Federal returns. Income, by virtue of the S election, being subject to a single layer of tax.
RIC shareholders also classify distributions under a conduit approach, but unlike S shareholders, they look to the earnings from which their distributions are paid. S corporation shareholders must account for and recognize taxable income of the corporation in the year in which it is earned by the entity, whether that income is distributed to them or not. Stock basis therefore keeps track of income already taken into account so that when a distribution is made in a later tax year the shareholders do not again include that amount in their taxable incomes. RIC shareholders are different. RICs must, under their agreements with their shareholders as well as in order to maintain their Subchapter M elections, distribute substantially all of their income annually. Timing of income recognition vis á vis the distribution of it is not an issue for the RIC shareholder. Because RICs are pure investment conduits, these shareholders classify distributions according to the earnings from which the distributions are paid. To the extent a RIC distributes out of ordinary investment income, *398 the distribution is considered an “ordinary dividend” and is included as such by the shareholder for the year in which received. Treas. Reg. §§ 1.852 — 4(a)(1). To the extent it distributes out of net capital gain, the shareholder treats the distribution as long term capital gain. I.R.C. § 852(b)(3)(B); Treas. Reg. § 1.852-4(b). To the extent it distributes out of tax exempt interest income [State or local interest], the exempt character also passes through, provided the conditions of I.R.C. § 852(b)(5) are met. Those conditions are: (i) at least 50% of the value of the RIC’s assets must consist of tax exempt bonds at the close of each quarter of the tax year, I.R.C. § 852(b)(5); and (ii) distributions must be identified as “exempt-interest dividends” by written notice within 60 days after the close of the tax year.
The Federal income taxation.of a RIC and its shareholders is integrated. When the entity meets the Subchapter M requirements, it is taxed as a conduit. In keeping with the conduit model, its Shareholders may characterize their distributions according to the character of the income earned by the entity (taxable dividends, exempt interest, capital gain). When the entity fails to meet the Subchapter M requirements, the Subchapter C rules apply for both the entity and the shareholders. Treas.Reg. § 1.852-l(b). In keeping with that model the entity is a separate taxpayer from its shareholders and the shareholders characterize their distributions by looking to E & P.

III. Taxation of the Fund under the CBT

New Jersey imposes a franchise tax on “[e]very domestic or foreign corporation which is not [otherwise] exempted ... for the privilege of having or exercising its corporate franchise in [the] State . . . .” N.J.S.A. 54:10A-2. The term “corporation” includes “any business conducted by a trustee or trustees wherein interest or ownership is evidenced by a certificate of interest or ownership . . . . ” N.J.S.A. 54:10A-4(c). The term “Regulated Investment Company” is defined in the CBT to include “any corporation which ... is registered and regulated under the Investment *399 Company Act of 1940 (54 Stat. 789) . . . .” N.J.S.A. 54:10A-4(g). The Fund is a Regulated Investment Company under the CBT.
RICs meeting the distribution requirements of I.R.C. § 852(a) pay a flat franchise tax of $250. N.J.S.A. 54:10A-5(d). RICs failing to meet the Federal requirements lose the favorable $250 flat tax treatment and fall, instead, under either: (i) the CBT rules applicable to “investment companies” (N.J.S.A. 54:10A-5d) or (ii) those applicable to “regular” corporations (N.J.S.A. 54:10A-5(c)). Investment company treatment means that the failed RIC[3] would be subject to the greater of a flat tax of $250 or a tax calculated at the full rate of 9%, but applied to only 25% of the failed RIC’s “entire net income” (as that term is defined in the CBT) allocable to New Jersey. Regular corporation treatment would mean the failed RIC would be subject to tax calculated at the rate of 9% applied to its “entire net income” allocable to New Jersey. N.J.S.A. 54:10A-5(c)(1).

IV. Taxation of Shareholders under the GIT

RIC shareholders look to N.J.S.A. 54A:5-1e. and f. and N.J.S.A. 54A:6-14.1 for the income tax treatment of distributions they receive. N.J.S.A. 54A:5-1 provides:
New Jersey gross income shall consist of the following categories of income:
e. Interest, except interest referred to in clause (1) or (2) of N.J.S. 54A:6-14, or distributions paid by a qualified investment fund as defined in section 2 of P.L.1987, c. 310 (C. 54A:6-14.1), to the extent provided in that section.
f. Dividends. “Dividends” means any distribution in cash or property made by a corporation, association or business trust ... (1) out of accumulated earnings and profits, or (2) out of earnings and profits of the year in which such dividend is paid . . . .
The term “dividends” shall not include distributions paid by a qualified investment fund as defined in section 2 of P.L.1987, c. 310 (C. 54A:6-14.1), to the extent provided in that section.
[Emphasis added.]
N.J.S.A. 54A:6-14.1 defines a “qualified investment fund” as
*400 any investment company or trust registered with the Securities and Exchange Commission, ... which for the calendar year in which the distribution is paid:
a. Has no investments other than interest-bearing obligations, obligations issued at a discount, and cash and cash items ...; and
b. Has not less than 80% of the aggregate principal amount of all its investments, ... in obligations described in N.J.S. 54A:6-14.
If a RIC, although qualified to pay exempt [State or local] interest dividends under Federal law, maintains less than 80% of its investment assets in obligations exempt from taxation under N.J.S.A. 54A-.6-14, as is the case with the Fund, or maintains equity investments, it will not constitute a “qualified investment fund.” Failure to qualify means that the entire amount of the RIC’s distributions will, to the extent of the RIC’s E & P, be characterized as “dividend” distributions. RICs are investment vehicles. Their entire purpose is to earn investment income. They maintain high levels of E & P. It would be unusual for a RIC’s distribution not to be covered by E & P. Therefore, the Shareholders of a “non-qualified” RIC will generally receive fully taxable dividend distributions.

V. Immunity Under 31 U.S.C.A. § 3124

The statutory immunity of Federal Obligations mandated by 31 U.S.C.A § 3124 is rooted in the Supremacy and Borrowing Clauses of the Constitution. See M’Culloch v. State of Maryland, 4 Wheat. 316, 17 US. 316, 4 L.Ed. 579 (1819), where a State tax upon the operations of a Federally chartered bank was held unconstitutional because the tax was upon an instrument employed by the Federal government to carry its powers into execution, and Weston v. City Council of Charleston, 2 Pet. 449, 27 U.S. 449, 7 L.Ed. 481 (1829), where a local property tax imposed upon Federal securities was declared invalid as impinging upon the exercise of the Federal government’s borrowing powers. In 1862 Congress enacted the first statute embodying the principles announced in M’Culloch and Weston. Designated “Rev. Stat. § 3701,” 31 U.S.C.A. § 742, it provided:
[a]ll stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority.
*401 That statute was interpreted several times by the United States Supreme Court. In Society for Savings v. Bowers, 349 U.S. 143, 75 S.Ct. 607, 99 L.Ed. 950 (1955) the Court reached back to the early cases to recognize the general principle that obligations of the Federal Government are immune from taxation by the States. The property tax in Bowers was assessed against the book value of “capital employed, or the property representing ...” that capital of mutual savings banks. Id. at 146, 75 S.Ct. at 609, 99 L.Ed. at 957. The Ohio statute contained no provision for the deduction of the value of Federal Obligations owned by the banks from the tax base. The Ohio Supreme Court determined that the tax was imposed not upon the mutual savings banks, but instead upon the intangible property interests of their depositors. That court concluded that the banks’ capital was used simply as the measure of the tax upon the depositors. It upheld the tax. The United States Supreme Court reversed, concluding that the tax was upon the entity banks and because it failed to exclude Federal Obligations, it infringed on the immunity of those obligations from taxation by the States. The Court recognized that a tax upon the depositors or upon shareholders would, under the “gloss” added to the M’Culloch and Weston principles, have survived. Bowers explained:
It has been held that a state may impose a tax upon the stockholders’ interests in a corporation, measured by corporate asset values, without making any deduction on account of United States securities held by the corporation . . . . This result was reached in part on the theory that the stockholders’ interests in a corporation represent a separate property interest from the corporation’s ownership of its assets, so that a tax on the stockholders’ interests is not a tax on the federal obligations which are included in the corporate property. This rationale has been carried over to cases involving stock of state-created banks, and thus a tax on their stockholders, though measured by corporate assets which include federal obligations, is held not to offend the rule immunizing such obligations from state taxation . . . . The result is that when, as is usually the case, the shareholder tax is measured solely by corporate asset values, such a tax is difficult to distinguish from a tax imposed upon the corporation itself, so far as the practical impact of the two types of taxes upon corporate-owned federal obligations is concerned. Nevertheless, this exception to the general rule of immunity is firmly embedded in the law.
[Bowers, supra, 349 U.S. at 147-148, 75 S.Ct. at 610, 99 L.Ed. at 957-58 (emphasis added) (citations omitted).]
*402 In 1983, the Supreme Court considered “whether a Texas property tax on bank shares, computed on the basis of the bank’s net assets without any deduction for tax-exempt United States obligations held by the bank, violates Rev.Stat. § 3701, as amended.” American Bank & Trust Co. v. Dallas County, 463 U.S. 855, 857, 103 S.Ct. 3369, 3372, 77 L.Ed.2d 1072, 1075-76 (1983) (emphasis added). The issue involved the same entity/shareholder tension as the earlier Bowers. Both the statute and result, however, were different in 1983.
In 1959 Congress amended 31 U.S.C.A. § 742 to provide:
All stocks, bonds, treasury notes, and other obligations of the United States shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes.[4]
The Texas statute in American Bank & Trust imposed a shareholder level property tax on bank shares. The tax was computed by an “equity capital formula.” American Bank & Trust, supra, 463 U.S. at 863, 103 S.Ct. at 3375, 77 L.Ed.2d at 1079. Under the equity capital formula, one first determined the value of the bank’s capital assets, next subtracted the bank’s liabilities and the value of its real property holdings, and finally divided the result by the number of shares outstanding to determine the taxable per share value. In holding the Texas tax “[p]lainly, ... takes into account, at least indirectly, the federal obligations that constitute a part of the bank’s assets,” id., the Court analyzed the 1959 amendment as follows:
The exemption for federal obligations provided by § 3701, as amended in 1959, is sweeping: with specific exceptions, it “extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax.”
*403 [The amendment] rejected and set aside this Court’s rather formalistic pre-1959 approach to § 3701. Under that approach if a tax were imposed on a property interest or transaction separate from the ownership of federal obligations, the method by which the tax was computed was entirely irrelevant. This remained true despite the Court’s recognition that the practical impact of such a tax is indistinguishable from that of a tax imposed directly on corporate assets that include federal obligations. See Society for Savings v. Bowers, 349 U.S., at 148, 75 S.Ct., at 610 ... Under the plain language of the 1959 amendment, however, the tax is barred regardless of its form if federal obligations must be considered, either directly or indirectly, in computing the tax.
Giving the words of amended § 3701 their ordinary meaning, there can be no question that federal obligations were considered in computing the bank shares tax at issue here.
[American Bank & Trust, supra, 463 U.S. at 862, 103 S.Ct at 3375, 77 L.Ed.2d at 1078-79.]
The Court found this conclusion reinforced by the express exceptions included in the amended statute.

VI. The Director’s Non-Conductor Argument

The centerpiece of Director’s position here is the “non-conductor” principle. Director argues that the Fund is a corporation, by virtue of its Federal tax classification and, therefore, its tax attributes, including the character of Federal Obligation interest and gain, do not flow through to the Shareholders. Director’s argument is reflective of the Subchapter C corporation model of income taxation. It is rejected for several reasons, each of which involves not the character of the income distributed, but the character of the entity distributing that income. If it is determined here that the Fund’s Shareholders must enjoy 31 U.S.C.A. § 3124(a) immunity for the distributions of Federal Obligation interest they receive, then Director fears that all shareholders, even of Subchapter C corporations, will likewise enjoy that immunity. Director’s mistake is in focusing on the character of income rather than of the entity. It is the Fund’s conduit character which mandates the immunity of income in its shareholders’ hands.
First, the Fund is not a typical corporation, it is an investment conduit. The enormous differences between a typical corporation and a mutual fund are recognized in the models under which they are taxed for both Federal and CBT purposes. Beyond the recognition of the Fund’s conduit nature in the tax statutes are *404 differences under corporate law (ignoring, here, as the Director does, that the Fund is not a corporation but a trust). Two fundamental differences exist under corporate law between the “typical” corporation and the Fund. Under N.J.S.A. 14A:3-1, a corporation may have virtually unlimited powers to invest in any property (real and personal, tangible and intangible) and conduct any business it shall determine convenient or necessary. The Fund, like mutual funds in general, is specifically designed to meet the requirements of Subchapter M. Its business is limited solely to investment management of a portfolio which satisfies the stringent gross income and asset diversification requirements of I.R.C. §§ 851(b) and 852. A RIC will earn only three classes of income: interest, dividends, and gain. Each is a class not of ordinary business income but of “passive” investment income. In addition, while the Directors of the typical corporation have the power to distribute or withhold the corporation’s net income (N.J.S.A 14A:7-15), the Fund is obliged to declare and record distributions of its income among its shareholders automatically, on a daily basis, under the terms of its prospectus. To maintain its Subchapter M qualification, as well as to meet its representations to shareholders, the Fund must annually distribute at least 90% of its net income. I.R.C. § 852(a). Finally, if a RIC fails to distribute 98% of its ordinary income for any calendar year plus 98% of its capital gain for the 12 months ending October 31 of that year, it will be charged an excise tax of 4%. I.R.C. § 4982. The effect of this additional incentive to pass through net income cannot be ignored. The Fund cannot be equated with the traditional corporation. They are two different creatures.
Second, the single authority cited for the non-conductor principle, Miller v. City of Milwaukee, supra, rejected the principle, holding: “the immunity of the national bonds is too important to allow any narrowing [of the statute] beyond what the acts of Congress permit ...” and concluding that “it would be going too far to say that [the statute] allow[ed] an intentional interference that is only prevented from being direct by the artificial distinction between a corporation and its members.” Miller, supra, 272 U.S. at 715, 47 S.Ct. at 280, 71 L.Ed. at 489-90.
*405 Third, the Subchapter C model of taxation of corporations and their shareholders is only a tax model — not an absolute. As is clear from the scheme of taxation under Subchapters S and M, corporations can exist, function and be taxed as income conduits; such models are not contrary to their natures as entities separate and distinct from their shareholders. Neither the corporate form nor the MBT form of conducting business mandates taxation under the Subchapter C model. The Fund is established under a scheme designed to yield a single layer of Federal tax at the Shareholder level. The Fund is akin to a Trust or a Subchapter S corporation in this regard. Each of those entities, while recognized as separate and distinct from their beneficial owners, for tax purposes passes out its income earned and deductions incurred, as well as the character of tax exempt income, to its beneficiaries (I.R.C. §§ 652(b) and 662(b)) and shareholders (I.R.C. § 1366(b)). (See Bittker & Eustice, supra, ¶ 1.05). The State of New Jersey, like the Federal government, may tax “regular” corporations in accordance with the non-conductor model of Subchapter C.
Fourth, the Legislature itself recognizes the conduit nature of investment funds under the GIT. Director’s “non-conductor” analysis ignores completely the plain language of N.J.S.A. 54A:5-1e and f and N.J.S.A. 54A:6-14.1. Together these exclude from gross income “[¡Interest ... distributions paid by a qualified investment fund . . . .” (N.J.S.A. 54A:5-1e and 54A:6-14.1); “dividends ... paid by a qualified investment fund . . . .” (N.J.S.A. 54A:5-1f and 54A:6-14.1); and “distributions paid by a qualified investment fund, to the extent ... attributable to interest or gain from obligations described in N.J.S. 54A:6-14” (N.J.S.A. 54A:6-14.1). The Legislature must have viewed investment funds as conduits otherwise it would not have allocated items of income to the N.J.S.A. 54A:5-1c, e and f categories. Director ignores these provisions, sweeping all non-qualified mutual fund items of income into the category “dividends” without explanation.
Fifth, the decisions of our sister States cited by Plaintiffs and set out above are all based upon the conduit analysis applied here. While not binding, the decisions of those many courts are over *406 whelmingly supportive. See Brown v. Franchise Tax Bd., supra, 242 Cal.Rptr. at 818, (holding the Miller non-conductor analysis “reminiscent of the ‘formal but economically meaningless’ distinctions ... which became untenable with the 1959 amendments to the federal statute”); Andras v. Illinois Dep’t of Revenue, supra, 106 Ill.Dec. at 735, 506 N.E.2d at 442 (holding “we are unable to discern any conceptual distinction between the ‘formalistic theory’ distinguishing a shareholder’s property interest from the entity’s assets ... and the ... theory that a shareholder’s dividend income is distinguishable from the entity’s income where, as here, the Trust’s entire net income is paid regularly to its shareholders ...”); Comptroller of the Treasury v. First United Bank & Trust, supra, 578 A.2d at 197 (concluding “Maryland can tax dividends from a regular C-corporatión, even if those dividends are derived from interest on federal obligations”). A C-corporation is clearly a separate entity for tax purposes. A mutual fund, however, is not the same type of entity. Commissioner of Revenue v. Plymouth Home Nat’l Bank, supra; Yurista v. Commissioner of Revenue, 460 N.W.2d 24 (Minn.1990); Borg v. Department of Revenue, supra; In re Sawyer Estate, supra.
And, finally, even under the non-conductor argument, it must be concluded that a RIC’s Federal Obligation interest is considered in the computation of the Shareholders’ tax under N.J.S.A. 54A:5-lf. The existence of current and/or accumulated E & P determines whether a distribution will be taxed, in whole or in part, as a “dividend” under N.J.S.A 54A:5-lf. Interest earned on Federal Obligations is included in the computation of a corporation’s E & P. The Fund’s E & P will include interest earned on Federal Obligations, whether the Fund is taxed under I.R.C. Subehapter C or Subchapter M; whether it is taxed as a Regulated Investment Company, an investment company, or a regular corporation, under the CBT.
The Fund Shareholders will have taxable income to the extent of their proportionate shares of the Fund’s E & P. To the extent included in E & P, Federal Obligation interest will be “considered” under 31 U.S.C.A. § 3124(a) in the computation of a Share *407 holder’s tax liability under the GIT. The inclusion of Federal Obligation interest in the E & P of the Fund, where E & P is the measure of the Shareholders’ income tax, is no less a “consideration” than the inclusion of the value of Federal Obligations in American Bank & Trust’s equity capital formula, where the shareholder’s tax was measured by the value of the banks’ assets. The banks in American Bank & Trust would have been the same “non-conductors” under Director’s argument here.

VII. The Fund Is a Conduit

The Fund, like any mutual fund structured as a Subchapter M investment conduit, is just that, a conduit, for GIT purposes. The plain language of 31 U.S.C.A. § 3124(a) requires that dividends paid by the Fund out of interest received on Federal Obligations be immunized from taxation under N.J.S.A. 54A:6-14, 6-14.1 and 5-1e and f, as Plaintiffs have argued. Taxation of the Fund’s Shareholders under N.J.S.A. 54A:6-14.1 and 54A:5-1e and f is barred by 31 U.S.C.A § 3124. This conclusion applies irrespective of whether the Fund (a mutual fund in general) qualifies in any particular tax year for I.R.C. Subchapter M treatment. The Fund will be a conduit until its organizational documents and Securities and Exchange Commission status are amended. Nor may this conclusion be avoided by Director’s argument that the tax is nondiscriminatory. Discrimination is not the issue, South Carolina v. Baker, supra, consideration is.

VIII. First National Bank of Atlanta and Rockford Life Insurance Company

Director argues that First Nat'l Bank of Atlanta v. Bartow County Bd., 470 U.S. 583, 105 S.Ct. 1516, 84 L.Ed.2d 535 (1985) and Rockford Life Ins. Co. v. Illinois Dep’t of Revenue, 482 U.S. 182, 107 S.Ct. 2312, 96 L.Ed.2d 152 (1987) support his conclusion that the 1959 amendment was not intended to accomplish anything other than abandon formalistic distinctions between previously acceptable and unacceptable forms of State taxation of Federal Obligations. He argues that before 1959, States could tax “Federal Interest Dividends” and therefore, unless this court is willing to *408 “broaden” the scope of 31 U.S.C.A. § 3124 (as he says the Supreme Court was unwilling to so in both First Nat’l Bank of Atlanta and Rockford Life Ins.), New Jersey may continue to tax Federal Interest Dividends. This view conflicts not only with the plain language of the statute itself, American Bank and Trust, but also with the holdings in the two cases relied upon.
The issue in First Nat’l Bank of Atlanta was not whether a claimed exemption was beyond the scope of the statute’s reach, but merely whether a bank might deduct the full fair market value of Federal Obligations to calculate the Georgia shares tax or whether liabilities allocable to the acquisition or carrying of the Federal Obligations should reduce that value. In holding that the allocation of liabilities was in accordance with the constitutionally-mandated immunity (“if banks are allowed to deduct from their assets both federal obligations and the liabilities fairly chargeable to those federal obligations, their ownership [ie. of federal obligations] will shelter taxable income” First Nat’l Bank of Atlanta, supra, 470 U.S. at 595, 105 S.Ct. at 1523, 84 L.Ed.2d at 545), the Court did not permit a limitation on the scope of 31 U.S.C.A § 3124’s immunity. Director’s conclusion that New Jersey has the power to limit 31 U.S.C.A § 3124’s immunity just as Congress has the power to prescribe I.R.C. § 852(b)(5) limitations on the exemption of State and local interest must be rejected.
Nor may it be concluded that Rockford Life Ins. rejected a broad and sweeping characterization of the effect of the 1959 amendment. The issue in Rockford Life Ins. was whether a debt instrument issued by a private institution, and guaranteed by the Government National Mortgage Association (a “Ginnie Mae”) was a Federal Obligation, the interest on which was immune under 31 U.S.C.A § 3124. In holding that Ginnie Maes are not Federal Obligations, the court concluded:
GNMA certificates are fundamentally different from the securities specifically named in the statute. Most significantly, they are neither direct nor certain obligations of the United States. As the certificate provides, it is the issuer that bears the primary obligation to make timely payments — the United States’ obligation is secondary and contingent.
[Rockford, Life Ins., supra, 482 U.S. at 188, 107 S.Ct. at 2316, 96 L.Ed.2d at 159.]

*409
IX. Intergovernmental Tax Immunity, Supremacy and Borrowing Clauses

Because it is determined here that the plain language of the Federal immunity statute bars New Jersey’s tax, it is not necessary to reach Plaintiffs’ more specific Intergovernmental Tax Immunity, and Supremacy and Borrowing Clause arguments.

X. Holding

For the reasons set out above, it is held that the plain language of 31 U.S.C.A. § 3124 requires that distributions paid by mutual funds be immune from taxation by New Jersey to the extent the distributions are attributable to interest earned on Federal Obligations. The tax imposed under N.J.S.A. 54A.-6-14.1, in concert with N.J.S.A. 54A:5-1e or f upon Shareholders of “non-qualified” investment funds is barred by the Federal statute because it sets out conditions for immunity which are inconsistent with the Supremacy Clause.
This holding does not apply to any entity other than a mutual fund which, like the Fund, is designed to function as an investment conduit under I.R.C. §§ 851-855. This holding has no effect on the taxation of dividends paid by traditional C corporations, as the Director feared. Those entities, having the power to accumulate or pay out their earnings, have E & P which may be viewed, under Director’s theory, as fungible.
Plaintiffs will submit a form of Judgment in compliance with the foregoing opinion.

 It appears that all mutual funds are designed to be taxed under I.R.C. Subehapter M as Regulated Investment Companies. The terms “mutual fund” and "RIC” are used interchangeably in tax literature and by the courts. This opinion refers to RICs but may just as well have referred to mutual funds.

 Effective January 1, 1997 subchapter S corporation may have 75 shareholders, IRC § 1361(b)(1) as amended by P.L. 104-188 § 1301, 110 Stat. 1759(1996) the "Small Business Job Protection Act of 1996."

 The term “failed RIC” is used to refer solely to an entity which has failed to meet the I.R.C. Subchapter M requirements.

 The statute was further amended in 1982 when Congress renumbered Rev. Stat. § 3701, 31 U.S.C.A. § 742, as 31 U.S.C.A. § 3124(a) and omitted the phrase "directly or indirectly” as surplus language. Congress very clearly indicated that no substantive change was intended by that omission.